## DRAPER et al. v. ROBINSON et ux.

### No. 1661.

Court of Civil Appeals of Texas. Eastland.

April 16, 1937.

Rehearing Denied May 14, 1937.

Bartlett & Bartlett, of Linden, and Darden & Burleson, of Waco, for appellants.

Carney & Carney, of Atlanta, and Wm. Hodges, of Texarkana, for appellees.

FUNDERBURK, Justice.

By this suit G. E. Robinson and wife seek to recover damages from R. L. Draper and Republic Underwriters for the death of plaintiffs' seven year old daughter, Mildred Ruth Robinson. The claim of liability is predicated, in part, on a certain bond of R. L. Draper as principal, and Republic Underwriters as surety. Damages in excess of the bond were claimed against R. L. Draper on the ground of negligence. The bond named "County Board of Cass County" as obligee and bound said principal and surety, their heirs, executors, and administrators, jointly and severally, to pay the sum of $2,000 upon condition that, "If said party [R. L. Draper] shall well and truly perform all the conditions and obligations imposed by reason of chapter 42, Acts of the 41st Legislature, 1929, First Called Session [Vernon's Ann.Civ.St. art. 2687a] and of this contract with said County Board of Trustees, entered into this 10th day of September, 1934, then this bond shall be null and void, otherwise to remain in full force and effect." The contract referred to was attached to the bond. It recited the employment of R. L. Draper to drive a school bus and named certain "stops" along a certain route, and obligated said driver to "transport all designated children of school age who appear at the

scheduled stops along the route designated." Other material provisions of the contract were:

"He [R. L. Draper] further agrees to use every care and precaution in the way of protecting the children transported, * * * and will be subject to any and all regulations required by county school board and county superintendent in safeguarding the lives of the children * * *. It is also agreed that this contract shall not be transferred to a third party without written permission from the parties of the first part, and that no driver shall be substituted except in urgent cases, without consent of· the county school superintendent * * ,*.

"It is further agreed that all of the provisions of chapter 42, Acts 41st Legislature, First Called Session, affecting transportation of pupils to and from school, shall be made a part of this contract."

Pertinent provisions of the act of the Legislature referred to (Vernon's Ann.Civ. St. art. 2687a) authorized the trustees to "employ or contract with a responsible person or firm," and provides that, "No person shall be employed to transport pupils, who is not at least twenty-one years of age and a competent driver of motor vehicles and sound in body and mind." A further provision is that: "Drivers of all school transportation vehicles shall be required· to give bond for such amount as the Board of Trustees of the district may prescribe, not less than $2,000.00, payable to the district, and conditioned upon the faithful and careful discharge of their duties for the protection of the pupils under their charge and faithful performance of the contract with (said) School Board; and they shall, before crossing any railroad or interurban railway tracks, bring their vehicles to a dead stop. Failure to stop before crossing such railway as provided herein shall forfeit the driver's contract and, in case of accident to pupils or vehicles the bond shall be forfeited and the amount and all right thereunder shall be determined by a court of competent jurisdiction."

While the bus, usually driven by R. L. Draper under the terms of said bond and contract, was in charge of and being driven by Thurman Draper, a son of R. L. Draper, the little daughter of plaintiffs, upon alighting from the bus in the public highway, ran into a passing vehicle, going in an opposite direction to that of the bus, and was killed.

Plaintiffs' petition alleged that, "On or about February 19, 1935, the said R. L. Draper caused the bus to be driven by his son, a young man under the age of 21 years." The only ground of negligence or failure of duty on the part of R. L. Draper personally was alleged thus: "That the defendant R. L. Draper was guilty of negligence in that he allowed his son, a young man under the age of 21 years to drive said bus on said occasion." There was no allegation to the effect that such alleged negligence of R. L. Draper was a proximate cause of the child's death.

Negligence of the driver of the bus (Thurman Draper) was alleged as follows: (a) "in stopping the bus at the place where the child was killed, in that it was just approaching a sharp curve and that the driver knew or by the use of ordinary care should have known that there was heavy and swift traffic on said highway and that an automobile approaching from the north could not see a child on the highway until about within ·100 yards of said child." (b) "* * * in directing the said child and permitting the said child to alight from said bus on the left hand side out in the middle of said highway." (c) "* * * the driver of said bus discovered the approach of said automobile just about the time the child was alighting from said bus and was guilty of negligence in failing to stop the child from attempting to cross the highway in front of the fast approaching automobile."

The only allegation of proximate cause immediately followed the above and was: "that the negligence of the *driver of said bus* as aforesaid was the proximate cause of the death of the said Mildred Ruth Robinson." (Italics ours.) Damages were claimed against the defendants jointly and severally as principal and surety on the bond in the sum of $2,000, and against R. L. Draper, only, as tort-feasor in the further sum of $3,000.

Upon a jury trial the only issues concerning *negligence* and *proximate cause* submitted to the jury, with the jury's findings thereon, were as follows: "Do you find from a preponderance of the evidence that the driver of the school bus on the occasion in question was guilty of negligence in permitting Mildred Ruth Robinson to alight from said bus on the left hand side of the bus? Answer Yes. Do you

find from a preponderance of the evidence that such negligence, if you have so 'found, on the part of the driver of the school bus, was a proximate cause of the accident in question? Answer Yes." From a judgment for plaintiffs against the defendants, jointly and severally, for the sum of $2,000, and against the defendant R. L. Draper only for an additional $1,000, both defendants have appealed.

It will be unnecessary for us to decide all the questions raised.

We think the bond, the contract, and statute providing for the contract and bond, altogether show that the obligations of the bond were intended for the benefit of the school children to be transported, as a provision for their protection. One such obligation was "He [R. L. Draper] agrees to use every care and precaution in the way of protecting the children transported." The express mandate of the statute is that the bond be required "for the protection of the pupils under their charge."

The general rule is that only the parties, or their privies, to a contract can have a cause of action by reason of a breach of its obligations. 13 C. J. p. 701, § 805. An exception to this rule is that if a contract be made for the benefit of one not a party to the contract, such a one may have a cause of action on the contract. Id., p. 705, § 815. We think the bond in question comes within this exception.

The parties to the contract, the performance of which was secured by the bond in suit, were, according to the allegations of plaintiffs' petition, "trustees of the said Hebron School District" and "R. L. Draper." But the parties to the contract in evidence were "County Board of Cass County" and "R. L. Draper." It is contended that there was a fatal variance between the pleadings and the proof. If this were a suit by the "trustees of said Hebron School District" to enforce an obligation of the bond under the same character of allegations, a different question would be presented. This suit being not by a party to the contract, but by parties seeking to recover on the theory that the bond was made for their benefit, we think the name of the contracting party (other than Draper) should be treated as an immaterial matter of description not within the rule that in a suit upon a contract recovery can be had, if at all, only upon proof of the identical contract alleged. For authorities supporting the last-named general rule, see collation in McAlister v. Bivings (Tex.Civ.App.) 29 S.W.(2d) 853. The obligation sought to be enforced in this suit is the same whether the contracting parties were as alleged, or as proved.

We are not convinced that the question of liability is one to be determined by application of the rules governing carriers and passengers with respect to the circumstances under which the relation between them ceases. It seems to us the duty of care on the part of the driver of a school bus would continue at least until a small child was safely off the highway.

Without discussion of further contentions of the appellants, we shall now proceed to consider the question of whether Republic Underwriters, the surety on the bond of R. L. Draper, is liable for damages resulting, not from the acts or omissions of R. L. Draper, but of a third person—Thurman Draper. As the case was submitted to the jury, all grounds of recovery, if any, were waived except the alleged negligence of Thurman Draper in permitting the child to alight from the bus on the left-hand side instead of the right-hand side.

We see no escape from the conclusion that Republic Underwriters would not be liable. The obligation of the surety as expressed in the bond was, in substance, to answer for the conduct of R. L. Draper. It did not purport to include the servants or agents of R. L. Draper, nor a transferee of the contract, nor a substitute driver, whether with or without the permission of the school board or county superintendent.

The contract, the performance of which was secured by the bond, provided that it "shall not be transferred to a third party without written permission from the parties of the first part," etc. Had there been a transfer of the contract with written permission, it would hardly be contended that the surety of R. L. Draper would, in the absence of any further agreement to that effect, continue as the surety of the transferee. If Draper undertook to transfer the contract without permission, the surety would no doubt be liable on the bond for such damages, if any, as could be shown to have been proximately caused by the wrongful transfer, but not for damages

resulting from the negligence of the transferee in operating the bus. Applicable principles of law are stated thus: "The liability of the surety is measured by his contract, and whether he is a gratuitous or compensated surety, while he is liable to the full extent thereof, such liability is strictly limited to that assumed by its terms, or as the rule is otherwise stated, a surety is not held beyond the terms * * * of his contract * * *. Sureties for one person are not liable for an association of several persons of which such individual is a member, or a firm including such person * * *. Where a statute provides that a bond or undertaking in actions or special proceedings shall continue in force after a change or addition of parties, its effect is merely to preserve unimpaired the liability in favor of the party for whom the undertaking was originally given and not to include the party substituted or added." 50 C. J. p. 71, § 126.

■ The text of Texas Jurisprudence says: "All the authorities agree that the liability of a surety is strictissimi juris; it cannot be extended by implication, construction or presumption beyond the terms of his contract * * * he is not liable for the default of his principal to perform any duty or obligation not fairly within the undertaking." 39 Tex.Jur. p. 918, § 22.

In Adams v. State, 105 Tex. 374, 150 S. W. 591, 592, we quote from the opinion as follows: "The liability of the surety company is based upon the bond and the bond was conditioned to secure the performance of the duties imposed upon the licensee. It follows that when the license ceased to exist as authority to the licensee to sell, the obligation of the surety company was also terminated."

In 21 R.C.L. p. 1061, § 104, it is said: "If a surety engages for an individual, the engagement is understood to extend to the acts of that individual alone, and will not continue if he takes in a partner; in other words, the surety for a single individual is not liable for a partnership of which said individual is a member." The reason for the rule is further stated thus: "A party may be induced to become surety for the individuals who compose a firm because of his confidence in their integrity, prudence, accuracy and ability as business men; but he cannot be presumed to have intended to become responsible for the possession of such qualities by some third person, who may be afterwards taken into the firm * * * after the retirement of one of its members." Id.

For aught the record in this case shows to the contrary, Thurman Draper may have been a partner of R. L. Draper, or even a transferee of the contract, but if it be granted that there were facts in evidence sufficient, prima facie, to warrant the presumption that he was a servant or agent of R. L. Draper, that would not be conclusive, since the bond, as said before, did not purport to obligate the surety to answer for the conduct of R. L. Draper's servants or agents. Premising that under certain circumstances such an obligation might arise from implication, there appears to be no basis for such implication here in view of the clearly expressed intention that the bus was to be driven by R. L. Draper personally. The provisions of the contract relating to its transfer to a third party and relating to a substitute driver were not grants of authority to Draper, but rather restrictions on his authority.

It is by no means clear that the law contemplates that a driver properly substituted under the provision that "no driver shall be substituted except in urgent cases without the consent of the county school superintendent" would be a servant or agent of the bonded driver. Suppose the regular driver, from disease or accident, should be suddenly rendered unconscious, and a driver was substituted by friends or school patrons. That, it seems to us, would be an urgent case not requiring the consent of the county superintendent under the terms of the statute, but certainly it could not be considered that the substitute driver under such circumstances would be the servant or agent of the regular driver. The statute would seem to authorize, with the consent of the county superintendent, the more or less permanent substitution of another driver. Aside from the consideration that such a substitute driver would not necessarily be either a servant or agent of the regular driver, and would probably be subject to give a bond himself, it would be entirely out of harmony with the law above quoted governing the liability of sureties to imply the liability of the surety for the conduct of such substituted driver. It would be most inconsistent to say that the surety would be liable for the conduct of the substituted driver under such circumstances, but would

not be if the substitute was a partner of the regular driver.

If it appears that these conclusions work an undue hardship, it can only be answered that the rights claimed and sought to be enforced are rights given by the statute. The Legislature is presumed to have known the principles governing the liability of sureties, and in making no provision that the sureties' bond should provide for an obligation to answer for the conduct of a substitute driver must be presumed to have intended that no such obligation was to be incurred. Under the terms of the contract, R. L. Draper had no right to operate the bus by a servant or agent since it clearly calls for his personal service, unless by consent of the county superintendent, or in an urgent case, a driver be substituted. The apparent hardship therefore would seem to result from the legislative policy.

Regarding the claim of individual liability of R. L. Draper for tort, if it be conceded that the pleadings sufficiently alleged that Thurman Draper was a servant or agent of R. L. Draper, there was no proof or finding of such fact.

It is therefore our conclusion that the court erred in not granting the defendants' request for a peremptory instruction, and that the judgment of the court below should be reversed and judgment rendered that plaintiffs take nothing by their suit. It is accordingly so ordered.