ESTATE of Wally GARZA et al., Appellants,

v.

McALLEN INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 8538.

Court of Civil Appeals of Texas, Beaumont.

Feb. 26, 1981.

Rehearing Denied March 26, 1981.

Preston Henrichson, Edinburg, for appellants.

Travis D. Hiester, Gary Gurwitz, McAllen, for appellee.

KEITH, Justice.

Plaintiffs below, on behalf of Wally Garza, Deceased, and his brother Eugenio Garza, Jr., appeal from judgment sustaining defendant's plea in bar and granting summary judgment that plaintiffs take nothing by their suit. For the reasons stated below, we affirm the judgment of the trial court.

The facts of this case are not in dispute. On May 17, 1978, Wally and Eugenio Garza, both high school students, boarded the school bus and took seats in the rear as usual. At a subsequent stop, several other high school students and Mark Trevino, who was not a student at that time, boarded the bus and also went to the rear. When the bus arrived at Travis Junior High School, a school of the McAllen Independent School District ("McAllen ISD"), some of the students attempted to exit through the rear door of the bus but were prevented from doing so by Eugenio Garza. A fight ensued, and one of the boys pulled a chain from his pocket and began striking Eugenio Garza with it. At some time during the fight, Mark Trevino pulled out a knife, which he had brought aboard the bus concealed under his shirt, and stabbed Wally Garza in the chest. Wally Garza died within minutes, and Eugenio suffered personal injuries and witnessed the death of his brother.

Plaintiffs alleged that McAllen ISD and its employees negligently failed to provide safe transportation for and effective control of the students riding the school bus. Defendant responded by plea in bar that the sovereign immunity protection of McAllen ISD was not waived by the provisions of the Texas Tort Claims Act, *Tex.Rev.Civ.*

Stat.Ann. art. 6252–19 (1970 & Supp. 1980–1981) (hereinafter cited as Act, with appropriate section number).

The parties discuss waiver of immunity in the various sections of the Act; but, *Section 19A* expressly provides that the Act shall not apply to school districts "except as to motor vehicles." Waiver of governmental immunity, as to school districts, has been accomplished only for injuries and damages arising from the *use* of motor vehicles. *Section 3.*

In *Tex.Rev.Civ.Stat.Ann. art. 6687b, Sec. 1, (a) and (b) (1977)*, the legislature defined the words "vehicle"[1] and "motor vehicle".[2] Our Supreme Court has approved, in a case arising under the Act, the ordinary dictionary term of "use". See *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 253 (Tex.Civ.App.—San Antonio 1973, writ ref'd). This is the language used in *Beggs*:

"[The dictionary] defines the word 'use' as meaning 'to put or bring into action or service; to employ for or apply to a given purpose.'" (496 S.W.2d at 254)

See also, *James Stewart & Co. v. Mobley*, 282 S.W.2d 290, 294 (Tex.Civ.App.—Dallas 1955, writ ref'd); *Person v. Latham*, 582 S.W.2d 246, 248–249 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

Only if our plaintiffs' claims are shown to have been caused by the *use* of the motor vehicle can plaintiffs overcome the defense of governmental immunity. The fact that the school bus is a motor vehicle as defined in the Act is not the issue. The question in issue may be stated thus:

Do the facts set out in our record give rise to a claim for damages "proximately caused by the negligence or wrongful act or omission of any officer or employee . . . arising from the operation or use of a motor-driven vehicle"? (Act, *Sec. 3.*)

---

1. (a)—" 'Vehicle' means every device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks."

2. (b)—" 'Motor Vehicle' means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

For the reasons now to be stated, we answer our question in the negative.

The defendant school district, relying upon *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.), argues:

"[T]he allegations of negligence are related to the direction, control and supervision of students rather than the negligent *use* of the motor vehicle itself. While it is true that the unfortunate event took place on a motor vehicle, it was not through the motor vehicle's use or operation of the motor vehicle itself that the incident occurred."

We agree with the argument. In *Jackson*, supra, the claim was based in part on the theory that the policemen negligently failed to direct traffic around the stalled vehicle and to have it removed from the roadway. The Court reasoned that the failure of the officers to direct the traffic around the stalled vehicle did "not involve the operation or use of a motor-driven vehicle in its common and ordinary sense." (484 S.W.2d at 809)

In the case at bar, plaintiffs seek to hold the district liable because the bus driver and the school officials failed to enforce regulations governing the use of school buses by non-students and in failing "to control and discipline the behavior of the bus occupants."

In this case, just as in *Jackson*, supra, the injury arose out of the failure to control and supervise the public, and not from the operation or use of a motor vehicle. In each case, the presence of the motor vehicle did not cause the injury.

A similar claim was considered by the court in *Brantley v. City of Dallas*, 545 S.W.2d 284, 286–287 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.), where plaintiff was denied emergency ambulance service by city employees. The Court affirmed the summary judgment for the city, saying:

"Taking the words 'use' and 'operation' in their common and ordinary meaning, an allegation that injuries resulted because a technician refused to transport plaintiff in an ambulance is not equivalent to an allegation that plaintiff's injuries were proximately caused by negligence arising from the use or operation of a motor vehicle."

See also, *Westbrook v. City of Edna*, 552 S.W.2d 608, 611 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.).

We have given careful consideration to plaintiffs' contentions but, making application of the authorities set out herein, we are unwilling to believe that the legislature, with the strictures imposed under *Section 19A*, intended to expose school districts to unlimited liability for stabbings on school buses while denying such claims for stabbings on the school grounds. See and compare the language used in *Beggs*, supra (496 S.W.2d at 254). In *Beggs*, as here, there was an error in judgment on the part of the employee, but sovereign immunity had not been waived.

The school district *used* a motor vehicle to transport Wally Garza to school. Mark Trevino *used* a knife to kill Wally Garza. Trevino's knife and not the use of the bus was the cause of plaintiffs' damage.

The trial court, under the undisputed record in this cause, acted properly in entering the summary judgment for the defendant; the judgment is AFFIRMED.

CLAYTON, Justice, dissenting.

I respectfully dissent. I would reverse the judgment of the trial court and remand this case for a trial on the merits.

In view of the trial court's action in sustaining the School District's plea in bar and plea in abatement and in granting its motion for summary judgment, as well as the view obviously taken in the majority opinion, the question of negligence and proximate cause on the part of the school bus driver is not involved on this appeal. We must assume the existence of negligence and proximate cause, or at least that a fact question is presented. Otherwise, there could be no liability on the part of the School District under the provisions of *Section 3* of the Tort Claims Act, and the question of waiver of governmental immu-

nity provisions of such Act would not be before us.

The only question before us is whether the allegations of appellants in this suit against the School District for personal injuries and death invoked the waiver of governmental immunity provisions of the Texas Tort Claims Act. *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976).

Appellants' alleged damages arose from personal injuries to Eugenio Garza, Jr., and the death of Wally Garza, while passengers in a school bus at a time when the bus was being used and operated for the purpose of transporting students to school. The injuries and death resulted from a stabbing by a non-student aboard the bus.

Allegations of negligence, inter alia, on the part of the School District's employee, the bus driver, were as follows:

"1. Negligently permitting one or more non-students to board, use, and ride [the school bus] on the occasion in question.

"2. Negligently permitting one or more persons to enter, use, and ride [the school bus] while such persons were armed with deadly weapons, including a butcher knife and a bicycle chain on the occasion in question.

"3. Negligently failing to deter and prevent acts of violence on [the school bus] on the occasion in question.

"4. Negligently failing to stop acts of violence which occurred on [the bus] on the occasion in question."

In view of the foregoing allegations, the majority holds the School District is not liable for the personal injuries and death for the reason that such injuries to one student and death to another did not arise from the operation or use of a motor vehicle. This conclusion is based upon the interpretation of the term "operation or use" as used in *Section 3* of this Tort Claims Act, wherein it is stated, in effect, that the School District "shall be liable for money damages for personal injuries or death when proximately caused by the negligence or wrongful act or omission of any ...

employee acting within the scope of his employment ... arising from the operation or use of a motor-driven vehicle...." The majority holds that governmental immunity is waived, in a case involving a motor vehicle, only in cases involving injury or death arising from an accident involving the negligent *driving* of the bus or where the *bus itself* is in contact with the injured party causing the injuries or death. It is with this narrow and strict interpretation of *Section 3* of the Act that I cannot agree.

The primary and sole purpose of operating and using the school bus on the occasion in question was to transport students to school. The injuries and death made the basis of this suit occurred while the student passengers were aboard the bus and while being transported to the school campus. While these students were aboard the bus, they were under the charge and care of the bus driver. The driver was under a duty to exercise care in safely transporting the students. *Reeves v. Tittle*, 129 S.W.2d 364 (Tex.Civ.App.—Eastland 1939, writ ref'd). This duty would extend from the time the student boarded the bus until he had safely alighted therefrom. See *Draper v. Robinson*, 106 S.W.2d 825 (Tex.Civ.App.—Eastland 1937, writ granted), modified on other grounds, 133 Tex. 280, 127 S.W.2d 181 (1939). The breach of this duty occurred while the bus was being operated and used for transporting students, and the injury and death arose from such breach of duty in the "operation or use of the motor-driven vehicle," within the meaning of these terms as used in *Section 3* of *Tex.Rev.Civ.Stat. Ann. art. 6252–19*.

I would readily admit that on many occasions and during incidents involving actions of the students resulting in injury to a passenger, a bus driver could not control the actions of the students and, therefore, could not prevent injuries being inflicted upon a student passenger. In such cases, the driver would not be negligent. However, the case of a non-negligent bus driver is not before us in the posture of the case at bar.

The majority cites, as lending support to their position, *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.); *Brantley v. City of Dallas*, 545 S.W.2d 284, 286 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Westbrook v. City of Edna*, 552 S.W.2d 608, 611 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). These cases are distinguishable from our case. In the *Jackson* case, the plaintiffs' allegations of negligence, as pointed out by the court, "were associated with the modes or means which the officers could have taken ... to rectify a situation that involved the resolution of a traffic problem; i. e., a vehicle stalled on a public highway. The allegations of negligence relate directly to the control of traffic." The court held that "[they] do not in any way arise from the operation or use of a motor-vehicle." The question of directing traffic upon a public street is not involved in our case. In the *Brantley* case the acts complained of were the refusal to transport a patient to a hospital in an ambulance owned by the city defendant. The court held that a "refusal to use" was not equivalent to an allegation that the the injuries were proximately caused by negligence arising from the use or operation of a motor vehicle. We do not have a "refusal to use" factual situation before us. In the *Westbrook* case, the court specifically states, "The Texas Tort Claim Act does not apply to the case at bar." (552 S.W.2d at 611).

In the case at bar, appellants have alleged acts of negligence against the bus driver, proximately causing the injury and death to student passengers while they were being transported to school. The negligence of the bus driver and the injury and death to the students occurred during and arose from the operation and use of a motor vehicle while it was being operated and used for the specific purpose for which it was intended. Under these circumstances, I would hold that the governmental immunity was waived pursuant to the provisions of *Article 6252–19, § 3* and *§ 19(A)*.

The School District further denied liability by its plea in bar, plea in abatement, as well as in its motion for summary judgment, for the reason that the claims made by appellants "arise out of an assault, battery or other intentional tort" and the "claims are based on a death or injury connected with an act or omission arising out of a riot and/or act of civil disobedience."

*Article 6252–19, § 14(9)* (1970) provides the Tort Claims Act does not apply to any "claim based on an injury ... arising out of civil disobedience, riot, insurrection or rebellion...." Under the facts of the case at bar and appellants' allegations, the occurrence complained of did not arise out of civil disobedience, riot, insurrection or rebellion. See *Forbus v. City of Denton*, 595 S.W.2d 621 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.). If I am mistaken in so holding, then, in any event, a fact question as to the existence of the elements enumerated in *Section 14(9)* would be raised precluding the trial court's action.

*Section 14(10)* of *Article 6252–19* provides exemptions from liability for "[a]ny claim arising out of assault, battery ... or any other intentional tort...." This exemption would apply only for such torts committed by the School District's employees. The bus driver did not commit any act of assault or battery or any intentional tort. Therefore, the School District's liability under the facts of this case could not be denied under this section of the Tort Claims Act.

I would reverse the judgment of the trial court and would remand the case for a trial on the merits.