Joyce LeLEAUX, Individually and as Next Friend of Monica LeLeaux, a Minor, and Monica LeLeaux, By and Through Next of Friend, Joyce LeLeaux, Petitioners,

v.

HAMSHIRE–FANNETT INDEPENDENT SCHOOL DISTRICT and Darrell Bill, Respondents.

No. D–0503.

Supreme Court of Texas.

April 29, 1992.

Rehearing Overruled Sept. 23, 1992.

Dale K. Hanks, Beaumont, for petitioners.

John E. Haught, Louis M. Scofield, Jr., Beaumont, for respondents.

## OPINION

HECHT, Justice.

Monica LeLeaux, a sixteen-year-old high school junior, hit her head while trying to close the back door of a school bus. She and her mother sued the owner of the bus, the Hamshire–Fannett Independent School District, and the bus driver for damages. The trial court granted summary judgment for defendants, and the court of appeals affirmed. 798 S.W.2d 20. We affirm the judgment of the court of appeals.

Monica's accident occurred on a school band trip, the events of which we summarize here based solely upon Monica's deposition testimony. She and the other band members had traveled in school buses to another school to compete in a marching contest. Once they finished, Monica and some of her schoolmates, along with the band director, stayed to watch other bands perform. At some point Monica returned to the bus she had ridden to the contest. The bus was parked and empty, and the rear emergency door was open. Monica did not open it, and she does not know who did. She and a friend, J.R. Thompson, sat together on pillows in the rear doorway of the bus, dangling their feet out the back, talking. No one else was in the bus while they were there.

When Monica and J.R. heard students coming toward the bus, they both jumped down to the ground. J.R. went around to the front of the bus to meet the kids coming back from the contest. Monica picked up her pillow, which had fallen to the ground when she jumped down, and threw it back into the bus. She then grabbed the seats or something else at the rear of the bus and jumped back up into the emergency doorway so that she could close the door. Although the door can be closed from the outside, Monica could not reach it from the ground well enough to shut it. She does not know why J.R. did not close the door, nor does she recall exactly why she decided to close the door, unless it was to protect the students' personal articles on

the bus from being taken. Neither the driver nor anyone else was on the bus, and the engine was not running. Whatever her reason for shutting the door, Monica did not jump back into the bus to take her seat.

Monica had gotten in and out of the bus through the rear door on prior occasions and knew how tall it was. She had never hit her head before. This time, however, as she jumped up into the rear doorway, she stood up, mistakenly thinking she was inside the door, and hit her head on the top of the door frame. She bent over in one of the seats, laughing, as she sometimes did in response to pain. J.R. heard her, entered the front of the bus and ran back to where she was. About that time, the bus driver came up, got on the bus, and started the engine. When he did, a buzzer signaled that the back door was open. The driver told Monica to close the door, but as she reached out to do it, she passed out. J.R. told her later that she had fallen to the ground, and that he had picked her up and carried her to the front of the bus, where she tried to stand up but passed out again. The next thing she remembered was the band director standing over her.

The school district, a governmental unit, is immune from liability for Monica's injury unless that immunity has been waived by the Texas Tort Claims Act. See TEX.CIV.PRAC. & REM.CODE §§ 101.001(2)(B), 101.025, 101.051. As it pertains to this case, that Act provides:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law....

TEX.CIV.PRAC. & REM.CODE § 101.021. This waiver of immunity is a limited one. A school district is not liable for a personal injury proximately caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." *Id.* The phrase, "arises from", requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment. While the statute does not specify whose operation or use is necessary—the employee's, the person who suffers injury, or some third party—we think the more plausible reading is that the required operation or use is that of the employee. This requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited.[1]

We have recently held that " '[o]peration' refers to 'a doing or performing of a practical work,' ... and 'use' means 'to put or bring into action or service; to employ for or apply to a given purpose'...." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989) (citations omitted). The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose". The bus was nothing more than the place where Monica happened to injure herself.

Monica argues that the school district was negligent in its operation and use of

---

1. The one case the dissent by JUSTICE DOGGETT cites to the contrary, *Smith v. University of Texas,* 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.), is not. In *Smith,* a volunteer track official alleged that he had been injured by university employees' use of track equipment and facilities. The court held "that a fact issue exists as to whether the University's employee ... [was] negligent in the use of such tangible property by failing to properly supervise the same in the conduct of the shot-put event." *Id.* at 188. The negligent use in *Smith* was that of the government employee, just as we conclude it must be to be actionable under the Tort Claims Act. The bus driver was not present when Monica hurt herself, nor does she claim that he should have been, or that he should have been supervising her at the time.

school buses because of its "practice of regularly loading and unloading the band students and their instruments through the emergency rear doors of school buses." She further asserts that on the day of the accident the bus driver was negligent in his operation and use of the bus by "specifically telling the students it was all right for them to use the emergency rear door for getting on and off the bus." Assuming as we must in the context of summary judgment that the district and driver were negligent as Monica argues, her injury did not, as a matter of law, arise from such use. Although we agree with Monica's contention that "[t]here is no sound reason why the acts of loading and unloading students on and off school buses should not be considered a part of the transportation process", the manner in which school district employees loaded and unloaded students had nothing to do with Monica's injury. When Monica bumped her head she was not being loaded onto the bus or unloaded from it; she was not returning to her seat, or putting something on the bus, or retrieving an article from the bus, or preparing to leave. According to her own testimony, she was simply jumping up into the bus to try to close a door that she has no idea who opened. This conduct did not arise from permission to load and unload through the door.

■ When an injury occurs on a school bus but does not arise out of the use or operation of the bus, and the bus is only the setting for the injury, immunity for liability is not waived. *See Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex.1987) (school district was not liable for failing to provide adequate medical care to a student with cerebral palsy who suffered convulsions on board a school bus); *Luna v. Harlingen Consol. Indep. Sch. Dist.*, 821 S.W.2d 442, 445 (Tex.App.—Corpus Christi 1991, writ denied) (school district was not liable for injuries two children sustained when they were struck by a vehicle while waiting at a bus stop for a school bus); *Naranjo v. Southwest Indep. Sch. Dist.*, 777 S.W.2d 190, 192–193 (Tex. App.—San Antonio 1989, writ denied) (school district was not liable for injuries

students sustained while working on a privately owned vehicle in an auto mechanics class); *Heyer v. North East Indep. Sch. Dist.*, 730 S.W.2d 130, 132 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) (school district was not liable when a student waiting on a bus was injured by a vehicle, owned and operated by another student, which the district permitted on the premises); *Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 380 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (school district was not liable for students injured by an explosion resulting from an attempt to light a smoke-producing device on board a homecoming parade float); *Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 528 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.) (school district was not liable when one student stabbed another with a knife while riding on a school bus). Because the record establishes that Monica's injury did not arise out of the school district's or its driver's operation or use of the school bus, we hold that the school district is immune from liability in this case.

■ We must also consider whether the bus driver, Darrell Bill, may be liable for Monica's injury. Section 21.912 of the Education Code provides in pertinent part:

(b) No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.

(c) This section is not applicable to the operation, use, or maintenance of any motor vehicle.

(d) "Professional employee," as used in this section, includes superintendents, principals, classroom teachers, supervisors, counselors, and any other person whose employment requires certification and an exercise of discretion.

Inasmuch as we have held that Monica's injury did not arise out of the operation or use of the bus, and maintenance of the bus is not involved, section 21.912 is applicable, and Bill is not liable to Monica if he is a "professional employee" and his actions involve the exercise of judgment or discretion.[2]

Bill's employment requires certification. Section 21.174(b)(3) of the Education Code requires school districts to "employ school bus drivers certified in accordance with standards and qualifications promulgated jointly by the State Board of Education and the Texas Department of Public Safety as required by law...." Bill's employment, driving a school bus, certainly involves an exercise of judgment or discretion. Accordingly, Bill is a "professional employee" as defined by section 21.912(d) of the Education Code.

Bill's actions involved the exercise of judgment and discretion customary in his employment as a bus driver. Monica appears to argue that Bill had a duty to instruct students regarding the safest means of getting off the bus, and that he failed to do so. Even if Monica's argument is correct, it is irrelevant. Monica was not getting off the bus when she was injured; she was trying to close the emergency door. Monica does not suggest that Bill had a duty to instruct students in the correct procedures for closing the door. The record contains extensive requirements imposed on school bus drivers, and none mandate instructions for closing emergency doors. On the record before us, we conclude that Bill was statutorily immune from liability to Monica.

\* \* \* \* \* \*

Having concluded that the trial court properly granted summary judgment for defendants, we affirm the judgment of the court of appeals.[3]

2. The exception in section 21.912(b) does not apply in this case. Although the language of that exception is not entirely clear, we have held that it applies only to discipline of students. *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 618–619 (Tex.1987); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex.1978).

Dissenting opinion by COOK, J., joined by GAMMAGE, J.

Dissenting opinion by DOGGETT, J., joined by MAUZY, J.

COOK, Justice, dissenting.

Because a fact issue remains regarding whether Monica's injury arose from the operation or use of the school bus, I dissent.

The Court relies on the following facts in deciding that, as a matter of law, the injury did not arise from the driver's use of the bus. First, at the time of Monica's injury, the bus was parked, empty, with the engine off. Second, neither the driver nor any other students were aboard. I fail to see how these facts foreclose the possibility that the injury arose from the driver's use of the bus.

In *Mount Pleasant Independent School District v. Lindburg*, 766 S.W.2d 208 (Tex. 1989), the Court held that "'use' means 'to put or bring into action or service; to employ for or apply to a given purpose'...." *Id.* at 211 (citation omitted). A jury could conclude that a "given purpose" of the bus was to provide a place for band students to await the end of the competition. Therefore, by leaving the bus open for students to enter, the driver could have been "employing" the bus for a given purpose. The fact that the driver was away from the bus does not establish, as a matter of law, that the bus was not being employed for a given purpose. His presence at the time of the injury is irrelevant.

For the above reasons, I believe a fact issue remains regarding whether the injury arose from the use or operation of the bus. Therefore, I dissent.

GAMMAGE, J., joins in this opinion.

3. The dissent by JUSTICE DOGGETT contends that the "true message" of the Court's opinion is that we have no confidence in the jury system. *Post,* at 56. We neither say nor imply anything of the sort. The issue here is not whether a jury is capable of deciding a case like this—it certainly is—but whether the Tort Claims Act permits such a case to go to the jury.

DOGGETT, Justice, dissenting.

Once again the majority has rewritten a statute to suit its fancy. *See Rose v. Doctors Hosp. Facilities,* 801 S.W.2d 841, 852 (Tex.1990) (Doggett, J., dissenting); *Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793, 798 (Tex.1992) (Doggett, J., concurring and dissenting). Representing a significant revision of the Texas Tort Claims Act, today's opinion effectively re-drafts the statute as follows:

the property damage, personal injury or death arises from the [*employee's*] operation or use of a motor-driven vehicle or motor-driven equipment....

Tex.Civ.Prac. & Rem.Code § 101.021(1)(A), *as modified by* page 51. By adding one new word that the Legislature never chose to include in its enactment, the majority bars Monica's recovery. This "legislative" action by the majority has no legitimate basis in either law or public policy.

The perceived need to interject the word "employee's" into the waiver provision as enacted by the Legislature has two asserted bases. The first is:

The phrase, "arises from", requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment.

*Id.* at 51. "Nexus," a term not found in the statute, means a "connection" or "link." Webster's Ninth New Collegiate Dictionary 797 (1989). Phrases are like links in a chain—they connect what comes immediately before with what comes immediately after. Rather than taking the links in order, the majority uses "arises from" to connect the words following ("operation or use") with another term ("employee's") some distance away in the chain. "Arises from" does require a nexus, between the two phrases on either side: "the property damage, personal injury, or death" and the "operation or use of a motor-driven vehicle or motor-driven equipment."

Proof of this connection, however, is not enough. The statute also requires that the

"property damage, personal injury, and death [be] proximately caused by the ... negligence of an employee acting within the scope of employment." Tex.Civ.Prac. & Rem.Code § 101.021(1). This Court recognized the two-fold nature of the required showing in *Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 211 (Tex.1989):

In order for a claim to fall within the limited waiver of sovereign immunity, the finder of fact must determine that the damages suffered were "proximately caused by the act or omission or the negligence of an employee ... [and arose] from the operation or use of a motor-driven vehicle...." Tex.Civ.Prac. & Rem.Code Ann. § 101.021.

(Bracketed language and ellipses in the original).

The second asserted basis for modifying the statutory language is that "[t]his requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited." At 51. The two-prong test of the statute as written limits the scope of the waiver: if there is no negligence by an employee, there is no liability; if the injury does not arise from operation or use of a motor vehicle, no waiver occurs. Today's "nexus" serves to limit the waiver beyond the legislative intent embodied by its choice of language. The Legislature modified "negligence" with the phrase "of an employee." It did not similarly limit "operation or use." Ordinarily this court does not "insert additional words into a statutory provision." *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 552 (Tex.1981); *see also Damon v. Cornett,* 781 S.W.2d 597, 599 (Tex. 1989) (refusing to insert the word "former" before "member of the Legislature" in interpreting Texas Constitution). It is thus not surprising that the majority cites no authority for this latest bit of judicial intrusion.[1]

In addition to its legislative handiwork the majority offers a number of excuses

---

1. Nor has this limitation been previously read into the waiver of sovereign immunity contained in section 101.021(2), which provides that a governmental unit may be liable for "personal

injury and death so caused by a condition or use of tangible personal or real property...." For example, in *Smith v. University of Texas,* 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd

for barring Monica's recovery. Despite having concluded that the governmental employee must be using or operating the school bus, the court nonetheless proceeds to analyze situations that exclusively involve the use of the bus by students. The majority concedes that " '[t]here is no sound reason why the acts of loading and unloading students on and off school buses should not be considered a part of the transportation process.' " At 52. The opinion nevertheless focuses on *why* Monica was using the bus rather than *whether* she was using it. Apparently Monica would be able to maintain suit had she entered the bus for certain purposes suggested by the majority: "returning to her seat, or putting something on the bus, or retrieving an article from the bus, or preparing to leave." *Id.* at 52. Why should it matter under this statute if she got on the bus to fetch her coat or to close the door? Drawing such fine distinctions is supported by neither statute, precedent, nor logic, and is certainly not appropriate in a summary judgment context.

The majority emphasizes that "[t]he bus was parked, empty.... [and] nothing more than the place where [injury occurred]." The Texas Tort Claims Act does not require that the vehicle being used also be in motion nor that the conductor yell "All aboard." What the majority is really saying is that Monica's injury is unrelated to the bus. But clearly, without the bus there would have been no injury. The relation-

ship between the injury and the vehicle clearly meets the traditional definition of cause in fact, recited time and time again by the Texas courts—"a substantial factor in bringing about the injury and without which no harm would have occurred." *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456 (Tex.1992); *Missouri Pac. Ry. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977). In none of the cases relied upon by the court was the physical injury actually caused by contact with the bus.[2]

Even under today's rewriting of the statute, Monica should be entitled to present her claims to a Texas jury. Monica's injuries are not segregated in this record. They do not all appear to stem from the blow to her head:

> The bus driver came up, got on the bus, and started the engine. When he did, a buzzer signaled that the back door was open. The driver told Monica to close the door, but as she reached out to do it, she passed out. [She was told by a fellow student] that she had fallen to the ground.

At 51. At the time of the fall, the ignition of the bus was engaged. Had the door not been open, and had Monica not been instructed by the driver, a governmental employee, to close it, she would not have sustained the fall. By reciting these critical facts but failing to discuss their legal effect, the majority revises the record to fit the theory of disposition it has created. Contrary to *Mount Pleasant,* 766 S.W.2d

---

n.r.e.), an injury sustained from a shot-put thrown at an athletic meet was found actionable under the Tort Claims Act. Rejecting the University's argument that the harm was caused not by an employee's use of the property but by the nonemployee who threw the shot-put, the court held "that a fact issue exists as to whether the University's employee ... [was] negligent in the use of tangible property by failing to properly supervise the same in the conduct of the shot-put event." *Id.* at 188. Monica has levied precisely the same claim here—that the bus driver was negligent in the use of the school bus by failing to properly supervise the manner in which students entered and exited.

**2.** In *Hopkins v. Spring Indep. Sch. Dist.,* 736 S.W.2d 617 (Tex.1987), the injuries did not arise from the use of a motor vehicle but from a seizure a student suffered as a result of a head

injury sustained earlier in the day at school after she was pushed into a stack of chairs. *Id.* at 617, 619. Similarly, in *Estate of Garza v. McAllen Indep. Sch. Dist.,* 613 S.W.2d 526 (Tex. Civ.App.—Beaumont 1981, writ ref'd n.r.e.), the student's knife injuries were unrelated to the bus. In *Naranjo v. Southwest Indep. Sch. Dist.,* 777 S.W.2d 190 (Tex.App.—San Antonio 1989, writ denied), the court found that the "plaintiff was not injured by the motor vehicle itself. Rather, his injury was the result of the gasoline which spattered from the cup in his hand." *Id.* at 192. In *Pierson v. Houston Indep. Sch. Dist.,* 698 S.W.2d 377 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.), the injury did not arise from the use of a motor vehicle but from igniting a gun powder-like substance with a cigarette while on a trailer bed pulled by a truck. *Id.* at 379.

**56** 

at 211, the majority has taken a question of fact and decided it as a matter of law.

Without prejudging how a jury would evaluate Monica's conduct, I believe it should also have the opportunity to evaluate the driver's conduct in permitting students to use the emergency exit contrary to his training. Although perhaps unable to anticipate every type of conduct in which a busload of students may engage, a driver does have a responsibility to ensure passenger safety by applying job training [3] and enforcing clearly defined governmental policies. Regrettably, today's action denies any jury consideration of whether an act or omission of the driver in the use of a vehicle was one cause of the student's injuries. There is simply no summary judgment evidence showing that as a matter of law Monica's conduct was the sole cause of the accident.

Why she may not seek redress under today's opinion is a mystery that has only one explanation. The true message of the majority is that there is no need to trouble jurors in Orange County with the tale of a giggling girl when some judges in Austin can save them the bother and immunize the government from the claims of whomever it injures. Those with confidence in the jury system must reject the majority's "suspicion and distrust of the concept of ordinary Texans, constituting a cross-section of their individual communities, assembling as a jury to make difficult determinations." *Reagan v. Vaughn,* 804 S.W.2d 463, 491 (Tex.1991) (Doggett, J., concurring and dissenting). The Texas Tort Claims Act should be interpreted reasonably to protect the public, rather than misconstrued to prohibit jury consideration of facts subject to conflicting interpretations.

MAUZY, J., joins in this dissenting opinion.

---

3. Although HFISD trains its bus drivers to restrict rear exit use solely to emergencies and requiries that they instruct their passengers on the safest means of departing, Monica and other band members had been regularly permitted to use the rear door for ingress and egress. On the day of the accident, the driver explicitly told the students they could make careful use of this entryway.