

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 17, 1990

Honorable Terry D. McEachern
District Attorney
Hale and Swisher Counties
Hale County Courthouse
Plainview, Texas 79072

Opinion No. JM-1261

Re: Whether a taxing unit is entitled to the exception from the waiver of sovereign immunity for claims arising from tax collection under the Texas Tort Claims Act when it acquires real property pursuant to section 34.05 of the Tax Code (RQ-2046)

Dear Mr. McEachern:

Governmental entities traditionally have enjoyed absolute immunity from tort liability. Lowe v. Texas Tech Univ., 540 S.W.2d 297 (Tex. 1976). See generally Prosser & Keeton, The Law of Torts ch. 25 (5th ed. 1984). Chapter 101 of the Civil Practice and Remedies Code, the Texas Tort Claims Act, constitutes a legislatively-enacted limited waiver of common-law sovereign immunity from tort liability. Westbrook v. City of Edna, 552 S.W.2d 608 (Tex. Civ. App. – Corpus Christi 1977, writ ref'd n.r.e.). Section 101.055(1) of the code excepts from the limited waiver of liability those claims arising from the assessment or collection of taxes; thus, claims arising from the assessment or collection of taxes are barred under the doctrine of sovereign immunity.

A taxing unit that is a party to a delinquent tax judgment may purchase the real property upon which the delinquent taxes are owed if the bid at a tax sale is insufficient. Tax Code § 34.05; see Attorney General Opinion JM-1232 (1990). You ask a series of general questions regarding whether and under what circumstances a county, a home-rule city, or an independent school district that purchases such property may be liable in tort in situations involving real property purchased at a tax sale for delinquent taxes. Specifically you ask:

What liability, if any, do the referenced taxing entities have with respect to properties "struck off"[1] to them for delinquent taxes at sheriff's sale?

In addition, you ask seven other questions in the form of "sub-issues":

1.  With respect to the liability question presented, would expiration of the two-year right of redemption have a bearing on liability?

2.  Would whether the property was "struck off" before or after June 15, 1989, have a bearing on the liability issue?

3.  Would whether the entities are actively pursuing a marketing plan have a bearing on the liability issue?

4.  Would any of the governmental entities be liable for a lack of maintenance of the properties during the period of redemption?

5.  Would any of the governmental entities be liable under tort law for failing to cure and/or warn of a nuisance or attractive nuisance existing on the "struck off" properties?

6.  Would any of the governmental entities be liable for razing a dangerous structure on "struck off" real property?

7.  Would there be equal liability regardless of whether the primary grantee,

---

1.  In the argot of the ad valorem tax profession, the phrase "struck off" refers to properties purchased by taxing units at a tax sale when bids are insufficient. Tax Code § 34.05. Such properties are said to be "struck off" the tax roll while they are in the possession of taxing units because such properties are exempt from taxation. See State v. Moak, 207 S.W.2d 894 (Tex. 1948) (footnote added).

> for itself and in trust for the other entities, was a municipality, a county, or a school?

Your sub-questions are general and hypothetical. They are not ones that can properly be answered by this office. Their speculative and fact-bound nature makes it appropriate for your office to advise its clients upon the development of appropriate facts in particular cases. See Attorney General Opinion JM-1224 (1990) at 15. We cannot make findings of fact in the opinion process. Therefore, we cannot answer your first, second, third, fourth, fifth, and sixth "sub-questions" as matters of law. Your seventh "sub-question" will be addressed inferentially in the discussion of your first question.

We understand your first question to ask whether claims against a county, a home-rule city, or an independent school district arising in connection with real property acquired at a tax sale fall within the exception set forth in section 101.055(1) of the code. Section 101.055 excepts from tort liability claims arising from certain governmental functions and provides in pertinent part:

> This chapter does not apply to a claim arising:
>
> (1) in connection with the assessment or collection of taxes by a governmental unit.

We turn first to municipalities.

You suggest that section 101.0215 of the code makes a municipality liable for damages arising from tax collection and thereby removes a home-rule city from the exception to limited tort liability afforded by section 101.055(1). We disagree with your construction of section 101.0215.

Section 101.0215 of the code was enacted in 1987 as part of a bill amending laws governing tort laws in Texas. Acts 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, at 47. The section provides:

> (a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised

by the municipality in the interest of the general public, including but not limited to:

. . . .

(26) tax collection;

. . . .

(b) [Provides that this chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, including but not limited to three specific functions that are listed.]

(c) The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).

We construe subsection (a) of section 101.0215 of the code to effect no more than a classification of those functions deemed "governmental." We do not construe it to impliedly repeal subsection (1) of section 101.055 of the code.

There is no indication in the legislative history of the bill to support an assertion that the legislature intended section 101.0215 to impliedly repeal subdivision (1) of section 101.055. See 3 Burwell, Texas Tort Reform: Legislative History 1987, 5-1248 through 5-1257 (1988) (hearings before the Senate Committee of the whole; 70th Legislature, First Called Session, June 2, 1987). Indeed, two authors addressed the newly-enacted section 101.0215 in the following way:

> The Legislature also addressed governmental liability and the Texas Tort Claims Act (TTCA). The most dramatic change to the TTCA is the addition of section 101.0215, which for the first time in Texas statutorily defines governmental functions and contains a nonexclusive laundry list of 33 common governmental functions by way of illustration.

Morrison & Auld, Tort Reform: An Overview, 51 Tex. B.J. 1108, 1111 (Dec. 1988) (footnotes omitted); see also Montford & Barber, 1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System, 25

Houston L. Rev. 59, 117-30 (1988); Comment, Texas Municipal Liability: An Examination of the State and Federal Causes of Action, 40 Baylor L. Rev. 595, 608-13 (1988). Accordingly, we conclude that a municipality may avail itself of the exception from limited tort liability set forth in section 101.055 of the Civil Practice and Remedies Code.

With regard to independent school districts, section 101.051 of the code waives sovereign immunity for school districts and junior colleges only with regard to acts or omissions arising through the negligent use of motor vehicles or motor-driven equipment. Events may occur that fall within the scope of the section 101.055 exception and a school district may avail itself of the exception in those instances.

You also ask about counties and it is to the possible liability of counties that we now turn. Certainly, the section 101.055(1) exception applies to counties; no other provision of the code acts to limit the exception to the waiver or to remove counties from its reach. Moreover, the tax sale and redemption process clearly falls within the ambit of the phrase "assessment or collection of taxes." See Murray v. United States, 686 F.2d 1320 (8th Cir. 1982), cert. denied, 459 U.S. 1147 (1983) (construing federal counterpart to section 101.055(1) of Texas act). The issue is determining under what fact situations the exception applies. Only two Texas cases have construed section 101.055(1) of the code or its predecessor; in each case, the court, while acknowledging that the activities involved taxes, held that the acts or omissions complained of were too indirect or too remote from the assessment or collection of taxes to fall within the section 101.055(1) exception from the waiver of liability.

In Harris County v. Dowlearn, 489 S.W.2d 140 (Tex. Civ. App. - Houston [14th Dist.] 1972, writ ref'd n.r.e.) [hereinafter Harris County], the plaintiff brought suit under the Texas Tort Claims Act for injuries suffered when an unattached wall panel fell against her in the county courthouse. The plaintiff was present in the county courthouse for the purpose of transferring an automobile title and obtaining license plates; the tax involved was the motor vehicle tax. The court held that even though the plaintiff was present in the county courthouse for a purpose related to tax at the time that she was injured, the provision of the act excluding any claim arising in connection with the assessment or collection of taxes by any governmental unit did not apply.

The court noted that the Texas act was modeled after the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and that the federal act contained an exception to the waiver of liability, 28 U.S.C. § 2680(c), that is substantially equivalent to what is now section 101.055(1) of the code. Relying upon federal cases construing the Federal Tort Claims Act, the court declared:

> Appellee's injuries had nothing directly to do with taxes. While she was in the Harris County Courthouse for that purpose, her injuries were sustained by the negligence of county employees apart from any tax situation. . . . So far as we can determine, all other federal cases arising under this exception to liability have as their factual basis an assessment or collection considered wrongful by the plaintiff. . . . It cannot be said with reason that this occurrence was the result of "the assessment or collection of taxes by a unit of government."

Harris County at 1467 (emphasis added) (citations of federal cases omitted).

In Driskill v. State, 779 S.W.2d 945 (Tex. App. - Fort Worth 1989), rev'd, 787 S.W.2d 369 (1990) [hereinafter Driskill], the court of appeals affirmed a district court order that the state was immune under the Texas Tort Claims Act in an instance in which the plaintiff was injured by a car driven by an employee of the comptroller of public accounts. The employee was traveling from one business to another to collect delinquent taxes or to discuss collecting delinquent taxes owed to the state. The court of appeals held that the claim arose from the assessment or collection of taxes and that the suit was barred by sovereign immunity.

The Texas Supreme Court disagreed. In overturning the court of appeals construction of section 101.055(1) of the code, the court noted that the Texas act was patterned after the federal act and held:

> Prior to the passage of the Texas Torts Claims Act, the federal counterpart had been construed to limit the United States' governmental immunity to claims regarding injuries which result directly from the assessment or collection of taxes. . . . We

> adopt a similar construction for Section
> 101.055 of the Tort Claims Act.

787 S.W.2d at 370 (emphasis in original) (citations omitt-
ed).[2]

Finally, in regard to its construction of section
101.055(1) of the code, the court declared:

> [W]e conclude that the legislature intended
> to limit the Comptroller's immunity to only
> those acts or omissions which constitute
> implementation of policy decisions on how to
> collect or assess taxes.

Id.

Both Harris County and Driskill construe the Texas Tort
Claims Act exception from limited liability for claims aris-
ing from the assessment or collection of taxes narrowly to
require that any acts or omissions falling within the excep-
tion must relate directly to the assessment or collection of
taxes. Indeed, Driskill can be understood to require that
immunity be limited only to "those acts or omissions which
constitute implementation of policy decisions on how to
collect or assess taxes." Id. The acts or omissions
complained of in both cases were held to be too indirect,
too remote from the assessment of collection of taxes.
Consequently, the courts held that the exception to the
limited waiver of sovereign immunity did not apply and that
the tort action could be maintained.

---

2. We note that in a footnote to the paragraph set
forth above, the court noted:

> Subsequent federal decisions continue to impose a
> requirement that the injuries arise from conduct
> directly related to the seizure of property or the
> gathering of information necessary for tax collection
> purposes. See, e.g., Interfirst Bank Dallas, N.A., v.
> United States, 769 F.2d 299 (5th Cir. 1985), cert.
> denied, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716;
> Capozzoli v. Tracey, 663 F.2d 654 (5th Cir. 1981);
> Morris v. United States, 521 F.2d 872 (9th Cir. 1975);
> Scott v. Internal Revenue Service, 622 F. Supp. 537
> (E.D.Tenn. 1985). (Emphasis added.)

At the other factual extreme is Murray v. United States, supra [hereinafter Murray]. In Murray the appellant took a mortgage on real property owned by a corporation. The real property was subject to a prior mortgage and was subject to IRS tax liens and other judgment liens. The IRS seized the property for nonpayment of taxes and subsequently purchased the property at a tax auction for the statutorily calculated bid. The appellant did not bid at the auction nor did he challenge the validity of either the tax lien or the auction sale. The appellant, however, did tender to the IRS a check equal to the amount plus interest that the IRS paid for the property and asked to redeem the property.[3] The IRS refused to accept the tender or to permit the redemption.

The appellant filed suit for damages for the allegedly wrongful refusal of his redemption offer. In the alternative, he sought a writ of mandamus compelling the United States to convey the real property to him and to void all prior deeds it had given on the property. The IRS asserted, inter alia, that the claim arose in respect of the assessment or collection of a tax and was thereby excepted by title 28, section 2680(c), of the United States Code from the limited waiver of tort liability effected by the federal act. The court agreed. The court held that the exception applied to third parties whose interests may be affected by tax collection efforts and that the appellants claim did fall within the exception to the waiver:

> The right of redemption arises only in connection with the tax levy, and is an integral facet of such a levy. A claim founded on redemption rights is clearly a claim "arising in respect of the collection of a tax" within the meaning of Section 2680(c).

Thus, at one extreme of a spectrum, claims arising in connection with a right of redemption have been held to fall within the exception to the waiver because such claims directly involve the assessment or collection of taxes. At

---

3. Subsection (b) of section 6337 of the Internal Revenue Code permits nontaxpayer third parties, specifically "any person having any interest therein, or a lien thereon," in addition to the owner-taxpayer, to redeem property.

the other extreme, claims arising from the acts or omissions of employees not directly involved with the implementation of policy decisions on how to collect or assess taxes and only peripherally involved with tax collection have been held not to fall within the exception.

We conclude, as a matter of law, that claims arising from acts or omissions regarding tax sales and redemption fall within the section 101.055(1) exception to the limited waiver of liability created by the Texas Tort Claims Act.

## S U M M A R Y

Claims arising from acts or omissions regarding tax sales and redemption fall within the exception set forth in section 101.055(1) of the Civil Practices and Remedies Code to the limited waiver of tort liability created by the Texas Tort Claims Act.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General