Lonnie L. TUCKER and Kerry Hartless, Appellants,

v.

ALLSTATE TEXAS LLOYDS INSURANCE COMPANY, Appellee.

No. 06–05–00086–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 23, 2005.

Decided Dec. 6, 2005.

Jerry D. Conner, Houston, for appellants.

Roy L. Stacy, Pamela J. Touchstone, Stacy & Conder, LLP, Dallas, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Lonnie L. Tucker and Kerry Hartless appeal from a summary judgment rendered in favor of Allstate Texas Lloyds Insurance Company, based on Allstate's position that it had no coverage for an injury to Hartless. In short, the summary judgment evidence shows that the two had moved Tucker's home-built light plane[1] onto a set of movable scales to weigh it— just out of curiosity—and while finishing lining up one of the main wheels, Tucker tipped the plane onto its nose, pinning Hartless under the propeller. Hartless sought to recover from Tucker; Tucker called on Allstate, who provided his home-

owner's insurance, to defend him. Allstate does not contend that coverage would not exist, but takes the position that an exclusionary clause prevents recovery.

Procedurally, the insurer sought a declaratory judgment specifying its rights and responsibilities under the terms of the policy, arguing that it had no duty to defend or cover the claim.

Allstate filed a motion for summary judgment, which was granted. Tucker's motion for summary judgment[2] was denied. Tucker and Hartless contend that the court erred by granting summary judgment because Allstate failed to establish as a matter of law that it did not have a duty to defend. We agree.

In its motion for summary judgment, Allstate took the position that the injury was not covered under the "aircraft" exclusion because it "arose out of" the ownership, loading, maintenance, and/or use of Tucker's airplane. It asked the trial court to hold that coverage was excluded and that it had no duty to either defend or to indemnify. The trial court granted the motion.

As a general rule, the insurer is obligated to defend if there is, potentially, an action alleged within the policy coverage, even if the allegations do not clearly show there is coverage. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965).

Thus, the correctness of the judgment depends on the meaning of the policy exclusion, and its application to the alleged

1. The aircraft is a Pietenpol. Its engine was not functional, and it had not been flyable since 1998.

2. Tucker and Hartless were aligned as defendants in this proceeding, but the counter-

motion for summary judgment was filed only by Tucker. Tucker and Hartless filed a joint notice of appeal from the judgment in favor of Allstate.

facts that resulted in the accident as shown by the pleadings, and the attached evidence. The exclusion is reproduced in whole.

1. **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to:

. . . .

h. *bodily injury* or *property damage* arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft:

Aircraft means any device used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

The evidence shows that the two friends, who own similar aircraft, were aircraft aficionados, and while they were at the airport where their aircrafts were stored, they began talking about the weight of the planes. Since a set of balance scales was in one of the hangars, they picked the scales up and moved them over to Tucker's airplane first, and slid one beneath each of the wheels. The scales were under the wheels, but while Tucker was positioning one scale to center it, he pulled on one side and the airplane nosed over on top of them both, pinning Hartless under the propeller.

**Duty to Defend**

 A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy. *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex.2004). An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). The insurer bears the burden to show that a policy exclusion applies, and courts adopt the insured's construction of an exclusion whenever it is reasonable, even where the construction urged by the

insurer appears to be more reasonable. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 202; *Altivia Corp. v. Greenwich Ins. Co.*, 161 S.W.3d 52, 54 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

 Even though this is a summary judgment, because of the nature of the declaratory relief sought, a different standard of review is involved than in the normal summary judgment appeal. *See Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex.App.-Texarkana 2001, no pet.). Whether an insurer in a liability policy is obligated to defend the insured is a question of law to be decided by the court. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied). In determining whether the insurer is obligated to defend the insured, we are to use the eight corners rule. *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141. The eight corners rule compares the provisions within the four corners of the policy with the factual allegations contained within the four corners of the plaintiff's pleadings (in the underlying lawsuit) to determine whether any claim alleged in the pleadings is within the coverage of the policy. *Id.*

In this case, Hartless's petition is attached as an exhibit to Allstate's motion for summary judgment. It contains no specifics about the nature of the claimed injury, the location of the injury, the way the injury occurred, or any other matter. The petition alleges Hartless suffered injuries November 23, 2002, as a result of Tucker's negligence. Allstate acknowledges these allegations trigger the homeowner's policy and suggests the focus of the case is on the policy exclusions.

We have previously acknowledged that, where the terms of the policy are ambiguous, or where the petition in the underlying suit does not contain factual allegations

sufficient to enable the court to determine whether the claims are within the policy coverage, the court may consider extrinsic evidence to assist it in making the determination. *Utica Lloyd's of Tex.*, 38 S.W.3d at 263; *Kessler*, 932 S.W.2d at 736; *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 450 (Tex.App.-Corpus Christi 1992, writ denied). Some courts have recognized that extrinsic evidence is allowed in very limited circumstances, including: (1) whether a person has been excluded from coverage, (2) whether the property in the suit has been excluded from any coverage, and (3) whether the policy exists. *See Fielder Road Baptist Church v. Guideone Elite Ins. Co.*, 139 S.W.3d 384, 388 (Tex. App.-Fort Worth 2004, pet. granted).[3]

Here, both parties have urged that we consider the evidence presented to the trial court. Thus, in this instance, we will review the evidence that was before the trial court at the time that it made its determination and apply that information to our review of the policy to determine whether the court correctly determined Allstate had no duty to defend.

■■■■ When interpreting the terms of an insurance contract, we follow the general rules of contract construction. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). Our primary concern is to ascertain the true intent of the parties as expressed in the written contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 866 (Tex.App.-Dallas 2003, pet. denied).

■■■■ Exclusionary clauses acting as limitations on liability are strictly construed against the insurer and in favor of the insured. *CBI Indus., Inc.*, 907 S.W.2d at 520; *Vincent*, 109 S.W.3d at 866. We are to adopt the construction of an exclusionary clause urged by the insured so long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 202.[4]

## Ownership

■■■ It is clear from the summary judgment evidence that Tucker owned the aircraft. Allstate has made no argument to suggest how a personal injury could "arise from" his ownership of the aircraft, and we perceive no way in which that concept could be applied here. To suggest that simply because Tucker owned the aircraft, any personal injury in which the aircraft was implicated in any fashion was excluded does violence to the remaining portion of the exclusory clause. The Tex-

---

3. The Houston First Court of Appeals has rejected the application of these exceptions. *Chapman v. Nat'l Union Fire Ins. Co.*, 171 S.W.3d 222 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.); *Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 890 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 862–64 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (noting the limited use of extrinsic evidence).

4. We note that this is in line with the general policy of ensuring that an insured receives what can be reasonably described as the agreed-on coverage. We also recognize that this public policy concept is handled differently for a review of the policy as opposed to exclusions. Language in the policy itself is read broadly, to provide coverage, whereas language in the exclusions is read narrowly— for the same reason. *See Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex. 1976) ("It is a settled rule that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer, and especially so when dealing with exceptions and words of limitation.")

as Supreme Court has held on several occasions that "arise out of" means that there is a causal connection or relation—a "but for" causation—though not necessarily direct or proximate causation. *Id.* at 203. There is no causal connection between Tucker's ownership of the airplane and the accident. Tucker could be liable for his negligent acts resulting in an accident which caused injuries to Hartless regardless of whether he owned the airplane. The trial court could not have properly rendered summary judgment on that basis.

### Maintenance

 Maintenance is one of the more clear-cut concepts involved in this phrase. Maintaining a device suggests that some action is being taken to keep it in operating condition, or to make it operable. In a discussion, the Texas Supreme Court has applied that term as encompassing the broader meaning involving the concept of supporting, sustaining, carrying on, and continuing in its purpose-even to the extent of including refueling a vehicle to keep it operable. *State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co.,* 437 S.W.2d 542, 545 (Tex.1969).

Under any definition, there is no evidence to suggest that Tucker and Hartless were involved in maintaining the vehicle. It was inoperable, and there is nothing to indicate their actions had any purpose toward making it operable, either directly or indirectly—and the evidence shows directly to the contrary. The trial court could not properly render summary judgment on that basis.

### Operation

 "Operation" of the vehicle refers to doing or performing a practical work. *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992); *Mount Pleasant Indep. Sch. Dist. v. Es-*

*tate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989). As previously pointed out, the vehicle was not operable. The evidence shows conclusively that it was not doing any work of any sort, and the trial court could not render summary judgment on that basis.

### Use

The Texas Supreme Court has recently discussed the term "use" in the context of an automobile insurance policy: "[t]he use required is of the vehicle *qua* vehicle, rather than simply as an article of property.... [I]f a vehicle is only the locational setting for an injury, the injury does not arise out of any use of the vehicle." *Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153, 156 (Tex.1999). Use means "to put ... into action or service; to employ for or apply to a given purpose." *LeLeaux,* 835 S.W.2d at 51 (holding that injury did not arise from use of school bus and that bus was a mere situs for the injury); *Lyons v. State Farm Lloyds and Nat'l Cas. Co.,* 41 S.W.3d 201, 205 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

Thus, the phrase "arising from use" is treated as being a "general catchall ... designed and construed to include all *proper* uses of the vehicle not falling within other terms of definition such as ownership an [sic] maintenance." *Pan Am. Ins. Co.,* 437 S.W.2d at 545 (emphasis added) (holding that refueling of truck was maintenance, not use); *see State Farm Mut. Auto. Ins. Co. v. Whitehead,* 988 S.W.2d 744, 745 (Tex.1999) (where State Farm urged that "use" refers to use of the vehicle as a vehicle); *Nationwide Prop. & Cas. Ins. Co. v. McFarland,* 887 S.W.2d 487, 493 (Tex.App.-Dallas 1994, writ denied) (discussing definition of "use" as "employment of a vehicle as a means of transportation, or some other purpose incident to transportation").

The Texas Supreme Court has also attempted on several occasions to provide some guidance in determining when an injury arises out of the use of a vehicle, and has set out (nonexclusive) considerations.

> For an injury to fall within the "use" coverage [or exclusion] ... (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, [and] (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Lindsey,* 997 S.W.2d at 157 (quoting 8 COUCH ON INSURANCE 3D § 119.37, at 119–56 (1997)). We also recognize that the court did not propose these factors as an absolute test, recognizing that the third factor is especially· troublesome. Additionally, the court added a fourth factor to examine: whether a person is using a vehicle as a vehicle depends not only on his or her conduct, but on his or her intent. *Lindsey,* 997 S.W.2d at 156; *Lyons,* 41 S.W.3d at 205.

We will attempt to apply the factors mentioned above to the facts of this case.

(1) Did the accident arise out of the inherent nature of the aircraft, as such? We do not believe that it did. The accident occurred when Tucker tipped the plane and it struck Hartless. The fact the object tipped by Tucker was an aircraft was incidental to the accident. The same type of accident and injury could have been caused if the two friends had been moving a piece of furniture and one lifted a corner of the furniture so that it tipped over and struck the other. Any number of items of personal property could have been the instrumentality involved. Nothing about the inherent nature of an aircraft caused this accident to occur. "The use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Mid–Century Ins. Co.,* 997 S.W.2d at 156.

(2) Did the accident occur within the natural territorial limits of the aircraft? The accident did occur as the two men were within the natural territorial limits of the aircraft even though neither of them was piloting the plane or attempting to prepare the plane for use as an aircraft.

(3) Did the aircraft merely contribute to the condition which produced the injury or did the aircraft itself produce the injury? The aircraft itself actually struck Hartless and, in that sense, produced the injury. However, as pointed out previously, there is nothing peculiar to an aircraft that caused this injury. This situation is factually similar to the one addressed by the Texas Supreme Court in *LeLeaux,* 835 S.W.2d at 51. The court applied the same reasoning set out above: that "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* In that case, a student was injured when she struck her head on the doorframe of the bus. The bus was not in operation; it was parked, empty, with the motor off. The driver was not aboard, and there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose." As described by the court, the bus was nothing more than the place where the student happened to injure herself. *Id.*

In this case, the aircraft was obviously not being used as an aircraft; not being used as transportation; not being prepared for use; not being prepared for repair; or engaged or employed for its given purpose in any fashion. As in *Lindburg,* the device was sitting empty, with

the motor off, no one was aboard, and it was nothing more than the place where Hartless was injured, not because of the device's actions, but because of the men's actions.

(4) What was the intent of Tucker and Hartless in weighing the aircraft? We recognize that determining the weight of an aircraft is important when deciding the amount of lift needed to safely fly the plane. However, the evidence is that this aircraft could not be flown because the engine block was cracked. Replacing the engine with another Model A engine would make the aircraft authentic, but was not feasible for flight purposes. The evidence was that the only reason to weigh this plane was to satisfy Hartless's curiosity, not to make a judgment as to the power needed to fly the aircraft.

It is at least equally reasonable to conclude that the "arising from use" exclusion does not exclude coverage where the device is merely present, even if some contact by the device is the cause of the injury—where the device is not being used for its given purpose.

Accordingly, this language of the exclusion does not provide a basis to support rendition of summary judgment.

**Loading or Unloading**

■ The phrase "loading or unloading" has been addressed a number of times. It means the transfer of goods to or from a vehicle, as well as the operation of transporting goods between the vehicle and the place from or to which they are being delivered. *Liberty Mut. Ins. Co. v. Am. Employers Ins. Co.*, 556 S.W.2d 242 (Tex. 1977). The evidence shows that the aircraft was not being loaded or unloaded with people, goods, or any other items at the time of the accident. The term cannot apply to these facts and could not have served as a basis for the summary judgment.

■ Accordingly, we must conclude that the trial court erred by granting summary judgment holding that the insurer had no duty to defend. Further, the trial court erred by granting summary judgment on the insurer's duty to indemnify. It is well settled that a trial court is without authority to decide an insurer's duty to indemnify in the absence of a final judgment in the underlying tort action. *See Cent. Sur. & Ins. Corp. v. Anderson*, 445 S.W.2d 514, 515 (Tex.1969); *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333–34 (Tex.1968); *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 846 (Tex.App.-Dallas 2004, pet. filed); *McFarland*, 887 S.W.2d at 491.

**Tucker's Motion for Summary Judgment**

■ Tucker also filed his own motion for summary judgment, which was denied. In general, an order granting a summary judgment may be appealed, but an order denying a summary judgment may not. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). However, an exception to this rule exists when both parties file motions for summary judgment and the court grants one and overrules the other. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). On appeal, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984); *McLemore v. Pac. Sw. Bank, FSB*, 872 S.W.2d 286, 289 (Tex.App.-Texarkana 1994, writ dism'd by agr.). Each party must clearly prove its right to judgment as a matter of law, and neither party may prevail simply because the other party failed to make such proof. *Bd. of Adjustment of City of Dallas v. Patel*, 887 S.W.2d

90 (Tex.App.-Texarkana 1994, writ denied); *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701 (Tex.App.-Houston [1st Dist.] 1987, writ denied).

■ Here, the facts are not in dispute. The sole question is whether the exclusion in the policy contains language which allows Allstate—based on the allegations of those facts—to avoid defending its insured. We have already pointed out that the determination on indemnity is not to be determined until there is a final judgment in the tort action. We have further concluded that the allegations and evidence presented in this case show that the act does not lie within the bounds of the exclusion. In this context, where the policy otherwise would provide coverage, because an exclusion does not apply, the duty to defend is necessarily invoked. Thus, we reverse the trial court's denial of Tucker's motion for summary judgment and render judgment that Allstate had a duty to defend under these allegations.

## Conclusion

We reverse the summary judgment rendered in favor of Allstate. We reverse, in part, the denial of the summary judgment rendered against Tucker and Hartless, and render judgment that Allstate had a duty to defend its insured. We remand the cause to the trial court for further proceedings consistent with this opinion.