In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00070-CV
 

______________________________




ALLAN L. BURNS, INSULATION SUPPLY COMPANY, ISC BUILDING 

MATERIALS, INC., AND ISC BUILDING MATERIALS, L.P., Appellants


V.



LAWRENCE S. STANTON, Appellee




 


On Appeal from the 162nd Judicial District Court


 Dallas County, Texas


Trial Court No. 07-03948-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 Allan L. Burns and Lawrence S. Stanton, previously co-owners of a successful building
materials company, Insulation Supply Co. (ISC), went their separate ways. As part of the separation,
Stanton, a former president and director of ISC, left with a nice buyout package, under which he was
initially paid as a consultant and later also sold his shares of corporate stock back to ISC for seven
figures. All obligations were secured with one-half of the ISC corporate stock. Those transactions
were completed in 2005. ISC initially was a corporation, (1) but in 2006 was converted into a limited
partnership (2) to save taxes. When Stanton learned of the conversion and its surrounding transactions,
he declared default and sought payment of the substantial sums due on the consulting agreement and
the promissory note. Faced with competing motions for summary judgment, the trial court rendered
summary judgment for Stanton.

 Burns and the companies (3) appeal from the summary judgment rendered in favor of Stanton.

 When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show there is no material
fact issue and that the movant is entitled to judgment as a matter of law. McNamara, 71 S.W.3d at
311.

 In general, an order granting a summary judgment may be appealed, but an order denying a
summary judgment may not. Novak v. Stevens, 596 S.W.2d 848, 849 (Tex. 1980). An exception to
this rule exists when both parties file motions for summary judgment and the court grants one and
overrules the other. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). On appeal, the
proper disposition is for the appellate court to render judgment for the party whose motion should
have been granted. Members Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d 325, 328 (Tex. 1984);
Tucker v. Allstate Tex. Lloyds Ins. Co., 180 S.W.3d 880 (Tex. App.--Texarkana 2005, no pet.).

 The essential facts in this case are established by the numerous documents in the record. The
determination of the competing motions for summary judgment rests on the interpretation of those
documents in answering only two issues joined by the parties: (1) whether default occurred as a
result of the conversion transaction and (2) whether notice of intent to accelerate the maturity of the
obligations owed to Stanton was given to Burns and ISC or was waived. Because we conclude that
default did occur and that notice of intent to accelerate maturity was given, we affirm the summary
judgment in favor of Stanton.

Factual Background

 Stanton and Burns owned (and operated) ISC. They each owned one-half of the stock in the
company, 125,000 shares each. They were also sole directors of the company. In 2002, Stanton
retired and became a consultant for an annual salary of $120,000.00. By 2005, the two had decided
to part ways, and Stanton sold his shares of stock back to ISC for $1.25 million. 

 ISC executed a note to Stanton, agreeing to pay Stanton the purchase price and interest in
monthly installments beginning in April 2005. ISC also continued the consulting agreement, to pay
Stanton an additional $10,000.00 per month for eighty-three months, and $310,000.00 on month
eighty-four. Burns personally guaranteed payment. The agreements effectuating the sale went into
effect March 8, 2005, and the payments began. (4)

 In 2006, Burns and ISC Corporation realized that approximately $280,000.00 could be saved
annually on taxes if ISC was converted from a corporation to a limited partnership. Without getting
Stanton's permission, a conversion was accomplished. Burns conveyed his 125,000 shares of
common stock to ISC Holdings General Partnership, which accomplished the conversion of ISC
from corporate to limited partnership form. In the conversion, ISC Corporation became ISC
Partnership and the shares of stock became partnership interests. One resulting partnership unit was
conveyed to ISC GenPar, L.L.C. The transaction was quite detailed, but all the details are not
necessary here.

 Pre-existing before the conversion was a Security Agreement securing the payment to Stanton
of the promissory note and consulting agreement; the collateral was the 125,000 shares of common
stock in ISC Corporation acquired by ISC Corporation from Stanton in the buyout. Stanton claims
that the conversion transaction, or at least some of its elements, constituted a default under the
Security Agreement.

(1) Default Occurred as a Result of the Conversion Transaction

 No claim was made that payments were in default; the claim is that the alleged default was
properly categorized as a nonpayment default. The core question is whether default occurred in the
process of the reorganization of ISC, when Burns' stock in ISC Corporation was exchanged for
various partnership interests in ISC Partnership, hinging on whether that exchange included a
"transfer" of the corporate shares.

 Among various other acts defined in paragraph 2.01 of the Security Agreement as falling
within the term "Event of Default," subparagraph h defined default to include "[t]he transfer . . . by
Burns . . . of any shares of common stock of the Company owned by Burns as of the effective date
of this Agreement." 

 In the Spring of 2006, ISC Corporation was converted into ISC Partnership. A preliminary
step involved in that conversion was Burns' execution of a document dated April 14, 2006, and titled
"Assignment and Power of Attorney," which contains this operative language: "I, Allan L. Burns,
hereby sell and transfer unto ISC Holdings General Partnership, all of the Common Stock of ISC
Building Materials, Inc. issued and outstanding in the name of Allan L. Burns." (Emphasis added.) 
That assignment is the operative document that put Burns' 125,000 shares into the partnership. In
that document, Burns also irrevocably appointed the corporate secretary as his attorney in fact "to
transfer said stock" on the books of the Corporation. (Emphasis added.)

 As of April 21, 2006, the Plan of Conversion was adopted by ISC Holdings General
Partnership, wherein that partnership is recited as being "all of the shareholders of ISC Building
Materials, Inc." Burns executed the Plan of Conversion as the Managing Partner of the ISC Holdings
General Partnership, not in his individual capacity as a shareholder or a former shareholder of the
ISC Corporation. It seems clear that, as of the time of the Plan of Conversion, Burns was no longer
a shareholder of ISC Corporation. Paragraph 1.01(6) of the Plan of Conversion provides that the
"outstanding shares" of the "sole shareholder"--that is, the Partnership--would be deemed to have
been automatically converted into partnership units. One hundred of those partnership units would
be issued, one of which would be "transferred" to ISC GenPar, L.L.C., as general partner. 
(Emphasis added.) Implicitly, ninety-nine partnership units would be retained by the Partnership. 
Also an additional ninety-nine limited partnership units and one additional general partnership unit
would be issued as, presumably replacement, collateral on the obligations owed to Stanton.

 We apply the plain meaning of the above language and conclude that Burns' conveyance of
all of his shares of common stock to the Partnership on April 14 was a "transfer" within the meaning
of the Security Agreement's definition of default, providing Stanton the trigger needed in order for
him to declare a default.

 Even if, somehow, Burns' transfer of all of his shares to the partnership could be seen as
something other than a "transfer" within the meaning of the Security Agreement, we note that the
Plan of Conversion provides that one percent of the proceeds of those shares, that is, the partnership
interests, would be "transferred" by the Partnership to ISC GenPar, L.L.C. (Emphasis added.)

 We conclude a transfer of Burns' stock, and thus a defined event of default, occurred.

(2) Notice of Intent to Accelerate Maturity Was Given

 Burns and ISC claim that Stanton did not adequately give notice of his intention to accelerate
the indebtedness, and that, therefore, acceleration was improper. Even with an event of default, an
acceleration of maturity is improper unless there was either a proper notice of intent to accelerate
maturity or a waiver of such a notice. Because we conclude that such notice was given, we do not
address waiver. (5)

 A negotiable instrument that is payable at a definite time may provide for the right of
acceleration of the debt on default. Tex. Bus. & Com. Code Ann. § 3.108(b) (Vernon 2002). 
Because acceleration of a debt is viewed as a harsh remedy, however, any such clause will be strictly
construed. See Ramo, Inc. v. English, 500 S.W.2d 461, 466 (Tex. 1973). Texas law requires clear
notice of intent to exercise acceleration rights, followed (if the debtor continues in default) by notice
of actual acceleration. See Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 233-34 (Tex. 1982). 
If the required notices are given, acceleration occurs.

 On December 7, 2006, Stanton's attorneys sent a letter to ISC and Burns, as well as Comerica
Bank, advising that default had occurred and that "Stanton will take all applicable enforcement
action (including enforcement action as defined by the Subordination Agreement, against" ISC and
Burns, once the ninety-day period set out by the Subordination Agreement had run. Though the
letter did not use the phrase "intent to accelerate" or its equivalent, its incorporation of the
Subordination Agreement's definition of "enforcement action" had that effect.

 To encourage Comerica Bank to finance ISC's operations, Stanton had entered into the
Subordination Agreement with the Bank, and that Agreement had been acknowledged by ISC and
Burns. That Agreement labeled Comerica Bank as the "Bank," Stanton as the "Creditor," ISC as the
"Borrower," Burns as the "Guarantor," all obligations ISC or Burns owed to Stanton as the
"Subordinated Indebtedness," (6) and all obligations ISC or Burns owed to the Bank as the "Senior
Indebtedness." It also specifically contained a definition of "Enforcement Action":

 As used herein, "Enforcement Action" means . . . to initiate or to participate with
others in any suit, action or proceeding against Borrower or any Guarantor to enforce
payment or to collect all or any part of the Subordinated Indebtedness . . . or the
Senior Indebtedness . . . or to accelerate the Subordinated Indebtedness (in the case
of Creditor) or the Senior Indebtedness (in the case of the Bank).

(Emphasis added.) 

 Therefore, when Stanton gave the December 7, 2006, notice of default and that he intended
to take "all applicable enforcement actions," that notice necessarily included the required notice of
intent to accelerate the maturity of the ISC and Burns obligations to Stanton.

 Under these facts, the trial court properly rendered summary judgment in favor of Stanton. 
Accordingly, we affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 30, 2009

Date Decided: June 4, 2009
1. The corporation was originally named Insulation Supply Company, but, on August 4, 2005,
changed its name to ISC Building Materials, Inc. For the purposes of this opinion, the name change
by the corporation is not material.
2. The limited partnership is named ISC Building Materials, L.P.
3. All three company names--Insulation Supply Company; ISC Building Materials, Inc.; and
ISC Building Materials, L.P.--are listed as co-parties with Burns. Distinguishing among the entities
is not material to this appeal, except to the extent we address the conversion from corporate status
to limited partnership status. The companies will be indiscriminately referred to herein as "ISC,"
except where the distinction between corporation and partnership is important. In that case, the
corporation--Insulation Supply Company or, after its name change, ISC Building Materials,
Inc.--will be called "ISC Corporation" and the partnership--ISC Building Materials, L.P.--will be
called "ISC Partnership."
4. The evidence shows that ISC continued making full and timely payments to Stanton
throughout the lawsuit and until the date judgment was entered.
5. A debtor may waive his or her right to demand, presentment, and notice. See Shumway v.
Horizon Credit Corp., 801 S.W.2d 890, 892 (Tex. 1991). A waiver of presentment, notice of intent
to accelerate, and notice of acceleration is effective, however, only if it is clear and unequivocal. Id.
at 893. Waiver of "notice" or even "all notice" or "any notice whatsoever," without more specificity,
does not waive the right to notice of intent to accelerate. Id.; Adams v. First Nat'l Bank of
Bells/Savoy, 154 S.W.3d 859, 868 (Tex. App.--Dallas 2005, no pet.); see Mastin v. Mastin, 70
S.W.3d 148, 155 (Tex. App.--San Antonio 2001, no pet.). Therefore, it appears that notice of intent
to accelerate maturity must have been given. We conclude, however, that it was given.
6. In paragraph 1 of the Subordination Agreement, the obligations included within the term
"Subordinated Indebtedness" are broadly defined: "any and all obligations and liabilities of
Borrower or any Guarantor to Creditor, including, without limit, principal and interest payments,
whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or to
become due, now existing or later arising and whatever the amount and however evidenced . . . ." 



>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00040-CR

                                                ______________________________

 

 

 

                                              IN
RE:  DOUGLAS ALAN DANZER

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                              Memorandum
Opinion by Justice Carter

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            Douglas Alan Danzer has filed a
petition for writ of mandamus requesting this Court to order the Honorable
Robert Newsome, presiding judge of the 8th Judicial District Court of Hopkins
County, Texas, to issue an order vacating Danzers conviction for aggravated
sexual assault of a child.  The facts, as
stated by Danzer in his petition, are as follows.  In 1998, Danzer pled guilty to aggravated
sexual assault of a child and was placed on deferred adjudication community
supervision for ten years.[1]  The trial court entered an order on August
20, 2008, extending the deferred community supervision for an additional ten
years.[2]  On February 4, 2009, the State filed a motion
to adjudicate guilt, Danzer pled true to the allegations, and the trial court sentenced
Danzer to sixty years imprisonment on May 1, 2009.  This Court affirmed Danzers conviction on
appeal.  Danzer v. State, No. 06-09-00113-CR, 2010 Tex. App. LEXIS 2810
(Tex. App.Texarkana Apr. 16, 2010, pet. refd) (mem. op.). 

            To be entitled to mandamus relief, a
relator must show that he or she has no adequate remedy at law to redress the
alleged harm and that he or she seeks to compel a ministerial act, not
involving a discretionary or judicial decision.  State ex
rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana, 236
S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding).  An act is ministerial if it constitutes a
duty clearly fixed and required by law.  State ex rel. Curry v. Gray, 726 S.W.2d
125, 128 (Tex. Crim. App. 1987) (orig. proceeding).

            Danzer argues his conviction is void
and he is entitled to mandamus relief. 
Danzer contends, because his community supervision period had expired,
the trial court lacked authority to extend his deferred adjudication community
supervision an additional ten years.  It
is not necessary for this Court to consider the merits of Danzers complaints; this
Court lacks jurisdiction to grant mandamus relief.[3]  The Texas courts have recognized that the
exclusive post-conviction remedy in final felony convictions in Texas courts is
through a writ of habeas corpus pursuant to TEX. CODE CRIM. PROC. art.
11.07.  Olivo v. State, 918 S.W.2d 519, 525 n.8 (Tex. Crim. App. 1996); see also Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp.
2010).  The Texas Court of Criminal
Appeals has held a writ of habeas corpus is the exclusive post-conviction
remedy even when it is alleged that the conviction is void.  Ater v.
Eighth Court of Appeals, 802 S.W.2d 241, 243 (Tex. Crim. App. 1991) (orig.
proceeding) (concluding court of appeals lacked jurisdiction to grant mandamus
relief for void conviction); In re
Snow, No. 12-10-00132-CR, 2010 Tex. App. LEXIS 6247 (Tex. App.Tyler
Aug. 4, 2010, orig. proceeding) (mem. op.). 
To the extent Danzers complaints could be considered an application for
a writ of habeas corpus, this Court has no original habeas corpus jurisdiction
in post-conviction criminal matters.  See Tex.
Govt Code Ann. § 22.221 (Vernon 2004); Ater, 802 S.W.2d at 243.  We
lack jurisdiction to grant mandamus relief.

            For the reasons stated, we deny
Danzers petition for writ of mandamus.

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          March 16, 2011

Date
Decided:             March 17, 2011

 

Do
Not Publish











[1]The
order attached to Danzers petition specifies Danzers ten-year community
supervision period was to begin and be effective as of the 13th day of August,
A.D., 1998 . . . .  The date of the
order, pursuant to a handwritten correction, was August 27, 1998.  

 





[2]The
order attached to Danzers petition states community supervision was extended
PURSUANT TO TEXAS CODE OF CRIMINAL PROCEDURE 42.12, SECTION 12A.  The order finds Danzer has not sufficiently
demonstrated a commitment to avoid future criminal behavior and finds the
release of the defendant from supervision would endanger the public.  We note that Section 22A of the Texas Code of
Criminal Procedure permits community supervision for certain enumerated
offenses to be extended for an additional ten years at any time during the
period of community supervision upon finding the defendant has not
sufficiently demonstrated a commitment to avoid future criminal behavior and
that the release of the defendant from supervision would endanger the
public.  See Tex. Code Crim. Proc.
Ann. art. 42.12, §
22A (Vernon Supp. 2010).  





[3]Danzer
cites numerous civil cases for the proposition that [m]andamus may be used to
set aside a lower court[]s order that is void . . . .