**Opinion issued January 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-21-00255-CV

—————————————

### CITY OF HOUSTON, Appellant

### V.

### JOHN ANTHONY BRANCH, Appellee

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Case No. 2020-31674

## DISSENTING OPINION ON EN BANC RECONSIDERATION

In this interlocutory appeal, the City of Houston challenges the trial court's order denying its motion for summary judgment in John Anthony Branch's negligence suit against the City. Branch alleged he was injured when City Councilmember Michael Kubosh, a passenger on a stopped golf cart, hit the gas

pedal of the cart with his foot as he leaned over to speak with someone, causing the golf cart to strike Branch.

A majority of this Court affirms the ruling of the trial court holding Branch presented evidence raising a fact issue over whether his injury arose from Councilmember Kubosh's "operation or use of a motor-driven vehicle" and thus whether his claim falls within the waiver of immunity in Section 101.021(1) of the Texas Tort Claims Act ("TTCA"). I respectfully dissent.

Because there is no evidence Branch's injuries arose from the operation or use of a motor vehicle or that the tangible personal property immunity waiver applies, I would reverse the trial court's order denying the City's motion for summary judgment and render judgment dismissing Branch's suit for lack of subject matter jurisdiction.

## Discussion

Branch asserted a negligence claim against the City of Houston, alleging Councilmember Kubosh "operated a golf cart" that struck him resulting in personal injury. In his Original Petition, Branch alleged that Councilmember Kubosh failed to (1) maintain a proper lookout, (2) control the operation of the golf cart, (3) avoid the incident in question, (4) pay attention to his surroundings, and (5) operate the golf cart as a person of ordinary prudence would have in the same or similar circumstances. Branch alleged his claims involved "personal injury caused by the

2

negligent operation or use of a motor-driven vehicle by [the City's] employee" and thus he could sue the City under the TTCA's motor vehicle waiver of immunity.

The City moved for traditional summary judgment on Branch's claim. It argued the TTCA's motor vehicle waiver did not apply because the waiver applies to public, not private, vehicles and further because Branch's injuries did not arise from an employee's negligent operation or use of the golf cart as a motor vehicle. One day prior to the hearing on the City's motion, Branch filed his First Amended Petition alleging waiver of the City's immunity under the motor vehicle waiver or, alternatively, the personal property waiver. Branch did not allege that Councilmember Kubosh "operated a golf cart," as he did in his Original Petition. Instead, he alleged that "City employee Michael Kubosh was in the passenger seat of a golf cart when he ran over Plaintiff" causing him injury. Branch did not assert negligence claims against John Gibbs or allege that Gibbs, the driver of the golf cart, was negligent in his operation or use of the golf cart.

Following the hearing on the City's motion for summary judgment, the trial court denied the motion.

### Section 101.021(1): Motor-Driven Vehicle Waiver

A plaintiff bears the burden of establishing a waiver of sovereign immunity in suits against the government. *Tex Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The City of Houston is a governmental unit generally immune from

3

tort liability except where the legislature specifically waives that immunity. *City of Hous. v. Nicolai*, 539 S.W.3d 378, 386 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Branch therefore had the burden to establish jurisdiction by pleading—and ultimately proving—not only a valid immunity waiver but also a claim that falls within that waiver. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135–36 (Tex. 2015); *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 586–87 (Tex. 2001).

Relevant to this appeal, Section 101.021(1) of the TTCA provides that a governmental unit is liable for personal injury "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if the personal injury "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1). This requires evidence of both (1) "operation or use" of a motor-driven vehicle, and (2) a causal connection between the "operation or use" and the plaintiff's injuries. *See Williams v. City of Baytown*, 467 S.W.3d 566, 573 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Courts strictly construe the terms "operation or use" of a motor vehicle under Section 101.021(1)(A). *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015) ("Given the Legislature's preference for a limited

immunity waiver, we strictly construe section 101.021's vehicle-use requirement.");

*see Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (explaining courts interpret waivers of immunity narrowly noting intent to waive must be expressed by clear and unambiguous language). While Section 101.021(1)(A) "does not explicitly require that the operation or use [of a motor vehicle] be 'active' or that it be ongoing 'at the time of the incident,'" a plaintiff's alleged damage or injury must "arise from" the motor vehicle's "operation or use." *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 305 (Tex. 2019). That is, the statute "requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle." *Id.* at 302 (quoting *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992)). The claim must be based on "more than mere involvement of property. *Id.* "[T]he use or operation [of a motor vehicle] 'must have actually caused the injury.'" *Id.* (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)); *see Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) ("[T]he operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'").

The Texas Supreme Court recently addressed the "arises from" and "operation or use" requirements in *PHI, Inc. v. Texas Juvenile Justice Department*, 593 S.W.3d 296 (Tex. 2019). There, a governmental employee drove and parked a Juvenile

5

Justice Department van on an incline near a PHI-owned helicopter, turned off the ignition, and exited the van without setting the emergency brake. *See id.* at 300. As the employee walked away, the van began rolling backwards and crashed into PHI's helicopter. *See id.* PHI sued the Department alleging it breached its duty to act with ordinary care in maintaining and operating the van based on its employee's negligence. *See id.* at 300–01. The Department filed a combined plea to the jurisdiction and motion for summary judgment which the trial court denied. *See id.* at 301. In a divided opinion, the court of appeals reversed and rendered a take-nothing judgment for the Department. *See id.*

On petition for review, the Department argued PHI's negligence claims were barred because its employee was not even in the van, much less actively operating it, when the collision occurred. *See id.* at 305. The Department relied on the Texas Supreme Court's prior statement in *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922 (Tex. 2015) that "a government employee must have been actively operating the vehicle at the time of the incident." *Id.* at 304–05 (quoting *Ryder*, 453 S.W.3d at 927). The Court clarified that while that statement remains an important inquiry, the court of appeals erred in treating it as statutory text. *See id.* at 305 ("*Ryder* correctly suggests that whether a government vehicle was in 'active' operation 'at the time of the incident' is an important consideration in determining whether an alleged injury arises from the operation or use of a vehicle. But a single

6

sentence from that opinion is not itself the rule of decision."). The Court held that although the employee was not in the van at the time of impact, the evidence raised a fact issue as to whether the accident "arose from" the employee's failure to set the emergency brake after he exited the van. *See id.* at 304.

In considering whether the Department employee's failure to engage the emergency brake qualified as "operation or use" of the van, the Court noted it had previously defined "use" as "to put or bring into action or service; to employ for or apply to a given purpose," and "operation" as "a doing or performing of a practical work." *Id.* at 303 (citing *Mount Pleasant Indep. Sch. Dist. v. Est. of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989)). After noting that these definitions, although correct, are not all that enlightening, the Court concluded that "ensuring your car will not roll away after you leave it, including engagement of the emergency brake when necessary, is an integral part of the 'operation or use' of a vehicle." *Id.* at 303–04. Notably, no one refuted that the Department employee had been operating or using (driving) the van moments before the incident. Rather, the sole question before the Court was whether applying the emergency brake was an "'essential' and 'final' aspect of driving the van . . . ." *Id.* at 304 ("PHI's allegation that Webb negligently performed this 'essential' and 'final' aspect of driving the van fits squarely within the textual parameters of section 101.021(1)(A).").

As part of its analysis, the *PHI* Court discussed its interpretation of the "operation and use" requirement in *LeLeaux v. Hamshire–Fannett Independent School District*, 835 S.W.2d 49 (Tex. 1992). In *LeLeaux*, a school bus took students from the defendant school district to a marching band contest where the students watched other bands perform. *See id.* at 50. While the school bus was "parked [and] empty, with the motor off," a student jumped onto the rear of the bus and hit her head. *Id.* at 51–52. The Court held the injury did not arise out of the operation or use of the bus because the bus "was nothing more than the place where [the student] happened to injure herself" and was "only the setting for the injury." *Id.* The *PHI* Court distinguished *LeLeaux*, stating,

> Here, by contrast, the Department's van was not simply the venue of the injury. The van itself rolled away and collided with the helicopter, and PHI alleges this happened because of the driver's negligent failure to make sure the van did not immediately roll away after he exited it. The bus *driver* in *LeLeaux* had nothing to do with the accident, whereas PHI's allegation is that the van *driver* caused the accident by negligently performing the final act of driving, which is making sure the vehicle he just finished driving wouldn't roll away.

*PHI*, 593 S.W.3d at 302.

In this case, the City argued in its motion for summary judgment that Councilmember Kubosh was not using or operating the golf cart as a motor vehicle but rather as a waiting area or holding cell. It argued that the unrefuted evidence established that, moments before the alleged incident, Councilmember Kubosh was sitting in the passenger seat of the stopped golf cart and leaned over toward the

8

driver's side—not to put the cart into motion—but to speak to someone. Relying on his affidavit and the affidavit of Gibbs, the driver of the golf cart, Branch responded he had presented sufficient evidence to satisfy the "operation or use" and "arise from" requirements of Section 101.021(1)(A) or, at a minimum, raised a fact issue precluding summary judgment.

In considering the City's motion, the trial court had before it the affidavits of Gibbs and Branch. Gibbs, the City's Community Outreach Liaison for Councilmember Kubosh, was responsible for driving Councilmember Kubosh in the parade in the Councilmember's privately owned golf cart. In his affidavit, Gibbs attested that:

> The day of the event, my role as Co-Chair was to drive Councilmember Kubosh in the parade, in his privately-owned golf cart.
>
> . . .
>
> I drove Councilmember Kubosh in the golf cart to find his correct position for the parade. I stopped the golf cart near where Chief Sam Pena was standing and applied the golf cart's brake and emergency brake. Mr. Branch approached the golf cart and leaned with his elbows on the windshield of the golf cart. His feet were underneath the front of the golf cart.
>
> With the emergency brake still on, I started to exit the golf cart from the driver's side. Councilmember Kubosh started to slide toward the driver's side of the vehicle. I observed with my peripheral vision his left foot pass over the gas pedal without touching it. With his shift in body weight the golf cart shifted forward. I did not see an impact between the golf cart and Mr. Branch.

9

In the affidavit attached to his summary judgment response, Branch stated:

> At the parade, City of Houston Councilmember Kubosh was sitting in the passenger seat of a stopped golfcart. Councilmember Kubosh leaned over to the driver's side of the golf cart to speak to someone. When Councilmember Kubosh did this, he reached out his hand and leaned his body to the driver's side of the golfcart. Then Councilmember Kubosh's foot hit the gas pedal and I heard the golfcart's engine rev. I then felt the golfcart hit me.

> John Gibbs was about 10 feet away, talking to someone else, when the golfcart hit me.

Based on these affidavits, the majority opines that "the case for immunity [here] is at least as strong as it was in *PHI*." It states that "[w]hereas applying the brake is the 'final' act of driving, applying the gas pedal initiates the act of driving. Indeed, the gas pedal is designed for the purpose of enabling the car to move. Consequently, stepping on the gas pedal—even when done unintentionally—squarely fits within the definition of 'use' as meaning 'to put or bring' the motor vehicle 'into action or service.'"

I disagree with the majority that this case is like or "as strong as" *PHI*. Unlike *PHI*, where the Department employee was the driver of the van, it is undisputed that Councilmember Kubosh was a passenger in a stopped golf cart. There is no evidence, like there was in *PHI*, that Branch's injury was caused by the Councilmember's negligent failure in making sure the golf cart was properly parked. To the contrary, the undisputed evidence is that Gibbs, the driver of the golf cart,

10

parked the golf cart and applied the brake and emergency brake before exiting the golf cart.

Contrary to the en banc majority's characterization, there is also no evidence Councilmember Kubosh "applied" or "stepped" on the gas pedal. Branch testified that Councilmember's Kubosh's foot *hit* the gas pedal as he leaned over to the driver's side to speak to someone, and not that the Councilmember stepped on or applied the gas pedal.[1] That the Councilmember may have "hit the gas pedal" with his foot while leaning over from the passenger seat to speak to someone does not transform this act into the "operation or use" of the golf cart as a motor vehicle for purposes of Section 101.021(1)(A). Nor do I agree with the majority that such act can be construed as "initiating the act of driving."

The undisputed evidence before the trial court established (1) Councilmember Kubosh was not the driver of the golf cart; (2) moments before the incident, the driver of the golf cart, Gibbs, stopped the golf cart, applied the golf cart's brake and emergency brake, and exited the cart; (3) Councilmember Kubosh was waiting in the passenger seat of the golf cart for the parade to begin; (4) no one directed Councilmember Kubosh to move the golf cart; and (5) Councilmember Kubosh was

---

[1] "Step" is defined as "to press down with the foot." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/step (last visited January 16, 2024).

11

"sitting in the passenger seat of a stopped golf cart" when he leaned over to speak to someone. Even assuming, as Branch averred, that Councilmember Kubosh's "foot hit the gas pedal" as he leaned his body toward "the driver's side of the golf cart," this evidence does not establish that the Councilmember was "doing or performing a practical work" or that he put the golf cart "into action or service" or "employed it for a given purpose." *PHI*, 593 S.W.3d at 303 (defining "use" as "to put or bring into action or service; to employ for or apply to a given purpose" and "operation" as "a doing or performing of a practical work").

In short, there is no evidence Councilmember Kubosh used or operated the golf cart as a motor-driven vehicle. Unlike the government employee in *PHI*, Councilmember Kubosh was not the driver of the golf cart, but merely a passenger. And while it is true that nothing in the statute requires the use or operation of a motor vehicle to be intentional, the conclusion that a person sitting in the passenger seat of a "stopped golf cart," while waiting for a parade to commence, has "used or operated" the golf cart by inadvertently hitting the gas pedal while leaning over to the driver's side to speak to someone stretches the definition of "operation or use" too far. As the Texas Supreme Court repeatedly has stated, "any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Id.* at 303 (quoting *Prairie View A&M Univ. v Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)).

In light of the evidence presented and applicable law, I would hold the City retained its immunity under the TTCA's motor vehicle waiver, because the evidence does not satisfy the "operation or use" requirement under Section 101.021(1)(A) of the TTCA and thus Branch did not establish his injuries arose from a government employee's negligent operation or use of a motor vehicle. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). Because I conclude that Branch failed to raise a fact issue over whether his injuries arose from a government employee's negligent operation or use of a motor vehicle, we need not decide today whether, as Branch contends, the motor vehicle exception extends to privately owned vehicles.[2]

Because I would sustain the City's first issue, I address the City's second issue below.

### Section 101.021(2): Tangible Personal Property Waiver

In its second issue, the City contends that Branch's untimely amendment to his petition invoking the tangible personal property waiver under Section 101.021(2) of the TTCA does not save his claims. The City argues that the personal property waiver does not waive its immunity because (1) the motor vehicle and tangible personal property waivers are mutually exclusive and cannot be pleaded in the

---

[2] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

13

alternative, and (2) the City itself did not use the golf cart, precluding application of the waiver.

On May 3, 2021, one day before the hearing on the City's motion for summary judgment, Branch filed his First Amended Petition asserting for the first time the tangible personal property waiver under Section 101.021(2) of the TTCA as an alternative basis for the trial court's jurisdiction. Branch does not explain the basis for jurisdiction in his First Amended Petition. Branch merely alleges, without more, that the "Court has jurisdiction over this claim under the Texas Tort Claims Act because the Texas Legislature waived Defendant's sovereign immunity under Tex. Civ. Prac. & Rem. 101.021(1) or in the alternative Tex. Civ. Prac. & Rem. 101.021(2)."

Branch moved for leave to file his First Amended Petition on May 4, 2021, the day of the summary judgment hearing. The trial court entered its order denying the City's motion for summary judgment that same day. In its summary judgment order, the trial court stated: "After considering Defendant's Traditional Motion for Summary Judgment, *the pleadings*, the response, the reply (if any), the affidavits, and other evidence on file, the Court DENIES Defendant's traditional motion for summary judgment." (Emphasis added.)

A party may not amend his pleadings within seven days of a summary judgment hearing without leave of court. *See* TEX. R. CIV. P. 63. When as here, a

14

summary judgment states that all pleadings were considered, "leave of court is presumed[.]" *B.C. v. Steak N Shake Operations, Inc*., 598 S.W.3d 256, 261 (Tex. 2020) ("[L]eave of court is presumed when a summary judgment states that all pleadings were considered, and when, as here, the record does not indicate that an amended pleading was not considered, and the opposing party does not show surprise.") (quoting *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996)). Although the City objected to the timeliness of Branch's amended pleading at the summary judgment hearing, it did not seek or obtain a ruling on that objection. There is thus no reason to conclude the trial court did not consider Branch's amended pleading when it heard and ruled on the City's motion. *See id.* at 262 ("And although Steak N Shake objected to the timeliness of B.C.'s response, it neither sought nor obtained a ruling on that objection before or after the trial court's order; therefore, we have no basis to conclude the trial court did not consider all summary-judgment evidence on file at the time the motion was heard.").

Because the trial court's summary judgment order expressly states it considered "the pleadings," I would presume leave of court was granted and that the trial court considered Branch's First Amended Petition during the hearing on the City's motion for summary judgment. *See id*. The City nonetheless argues that dismissal of Branch's suit is proper because the motor vehicle and tangible personal

15

property waivers are mutually exclusive and further because the City "itself did not 'use' the golf cart."

In considering grounds for reversal on appeal, we are ordinarily limited to those grounds expressly set forth in the summary judgment motions, answers, or other responses. *See* TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (citing *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979)). The City did not present these arguments to the trial court either in its summary judgment motion or during the summary judgment hearing. Instead, the City moved for summary judgment solely on the motor vehicle waiver because that was the only immunity waiver Branch had pleaded when the City filed its motion. Lack of subject matter jurisdiction, however, cannot be waived and may be raised for the first time on appeal. *See State v. Morello*, 547 S.W.3d 881, 888–89 (Tex. 2018) (stating "challenges to lack of subject matter jurisdiction may be raised for the first time on appeal"); *Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018) ("Because a challenge to the court's subject-matter jurisdiction cannot be waived, a party may raise exclusive jurisdiction for the first time on appeal."). As the Texas Supreme Court has clarified, because immunity from suit implicates a court's jurisdiction, appellate courts must consider all of a defendant's immunity arguments on appeal, whether the governmental entity raised other jurisdictional arguments in the trial

16

court or none at all. *See Rusk v State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012) (holding court of appeals erred when it declined to consider state hospital's new immunity arguments on appeal). Thus, this court must consider the City's jurisdictional argument, raised for the first time on appeal, that the personal property waiver does not waive its immunity.

In his First Amended Petition, Branch alleged "[t]he Court has jurisdiction over this claim under the Texas Tort Claims Act because the Texas Legislature waived Defendant's sovereign immunity under Tex. Civ. Prac. & Rem. [Code] 101.021(1) or in the alternative Tex. Civ. Prac. & Rem. [Code] 101.021(2)." Section 101.021(2) of the TTCA waives immunity for claims for "personal injury and death so caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021(2). The Texas Supreme Court has "consistently [] defined 'use' to be more than making tangible personal property available for use by another. To use something, the governmental unit must 'put [it] or bring [it] into action or service [or] employ [it] for or apply [it] to a given purpose.'" *Harris Cnty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (quoting *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004)). For the government to "use" tangible personal property, the governmental unit must itself be the user and the injury must be contemporaneous with the use of the tangible personal property. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 389 (Tex. 2016). A governmental unit

"does not 'use' tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it." *Id.* (quoting *Rusk State Hosp.*, 392 S.W.3d at 98).

The City contends the personal property waiver does not waive its immunity because the City itself did not use the golf cart. It argues the undisputed evidence shows the City did not make the golf cart available to Councilmember Kubosh and there is no indication that anyone from the City specifically authorized him to use it during the parade. The City asserts no authorization would have been, in fact, required because Councilmember Kubosh used his own personal golf cart and the City neither organized nor sponsored the parade. In response, Branch argues Councilmember Kubosh was a City employee acting within the scope of his employment, the golf cart constitutes tangible personal property, Councilmember Kubosh used the golf cart within the meaning of the statute, and the use of the golf cart caused Branch's personal injury.

Branch's allegations do not trigger the TTCA's tangible personal property waiver under Section 101.021(2) because the City itself did not use the golf cart. Even if merely providing the golf cart to Councilmember Kubosh were sufficient to waive the City's immunity—which it is not—the undisputed evidence establishes the City did not furnish the golf cart to the Councilmember because it was the Councilmember's privately owned golf cart. *See Sampson*, 500 S.W.3d at 389; *see*

18

*also Annab*, 524 S.W.3d at 801–02 (concluding county did not waive immunity under personal property waiver where record showed county did not make firearm available to deputy constable and deputy admitted he owned firearm prior to employment with county); *Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41–42 (Tex. 2013) (concluding patient's alleged injury resulting from being struck by falling whiteboard did not arise from nonprofit organization's "use" of personal property, and therefore organization did not waive immunity, where organization did not "use" whiteboard within meaning of TTCA Act merely by making it available for use).

Branch argues, alternatively, that his injuries resulted from a condition of the golf cart and further that Gibbs' testimony that he applied the golf cart's brake and emergency brake before exiting the cart created a fact issue over whether the golf car was defective or inadequate. Within the context of the TTCA, the Texas Supreme Court has defined "condition" as "either an intentional or an inadvertent state of being." *Sampson*, 500 S.W.3d at 388. Branch's negligence claims against the City are based solely on Councilmember Kubosh's alleged failure to (1) maintain a proper lookout, (2) control the operation of the golf cart, (3) avoid the incident in question, (4) pay attention to his surroundings, and (5) operate the golf cart as a person of ordinary prudence would have in the same or similar circumstances. Branch does not allege any facts in his First Amended Petition suggesting his claim

19

is premised on the "intentional or inadvertent state of being" of the golf cart.  Nor does he premise his claim on the actions of Gibbs.  Consequently, because Branch raises his alternative theories concerning the "condition" of the golf car for the first time on appeal, we may not consider them.  *See Foreman v. Lyndon B. Johnson Hosp.*, No. 14-19-00733-CV, 2021 WL 3161440, at *2 (Tex. App.—Houston [14th Dist.] July 27, 2021, no pet.) (mem. op.) (concluding plaintiff waived on appeal argument that governmental units waived immunity under TTCA where petition did not identify legal ground for alleged waiver).

Branch argues that because the City's summary judgment motion hinged on the motor vehicle waiver, the case should be remanded to afford him a fair opportunity to address the City's arguments based on the tangible personal property waiver.  "When a defendant raises a jurisdictional argument for the first time on appeal, remand may be appropriate to afford the plaintiff 'a fair opportunity to address' the jurisdictional argument." *Annab*, 547 S.W.3d at 616 (quoting *Rusk*, 392 S.W.3d at 96).  If, however, the party asserting the jurisdictional defense, in this case the City, establishes that (1) "the pleadings or record . . . conclusively negate the existence of jurisdiction," (2) the plaintiff did in fact have a "full and fair opportunity in the trial court to develop the record and amend the pleadings," or (3) even with a remand "the plaintiff would be unable to show the existence of jurisdiction," the case should be dismissed without a remand.  *Rusk*, 392 S.W.3d at 96.

There is no allegation in Branch's First Amended Petition, and no evidence in the record, from which a reasonable inference could be drawn that the City itself used the golf cart. The undisputed evidence establishes the City itself did not furnish the golf cart or have any involvement in Councilmember Kubosh's use of his privately owned golf cart at a parade the City neither organized nor sponsored. The filing of amended pleadings or future discovery will not change this key and undisputed evidence. Because no amount of future discovery or rephrasing of the allegations could properly invoke the TTCA's tangible personal property waiver, I would hold remand is inappropriate. *See Annab*, 547 S.W.3d at 616 (concluding court of appeals erred in remanding case to trial court to allow plaintiff to replead and conduct additional discovery where no amount of discovery or rephrasing of allegations could result in plaintiff's establishing county's liability for deputy constable's off-duty criminal act).

I would sustain the City's second issue.[3]

### Conclusion

I would reverse the trial court's order denying the City's motion for summary judgment and render judgment dismissing Branch's suit for lack of subject matter jurisdiction for the reasons set out in this opinion.

---

[3] Because I would hold the tangible personal property waiver does not waive the City's immunity, we need not address the City's argument that the motor vehicle and tangible personal property waivers are mutually exclusive.

21

Veronica Rivas-Molloy
Justice

On original submission, panel consisted of Justices Goodman, Rivas-Molloy, and Farris.

En banc reconsideration was requested. *See* TEX. R. APP. P. 49.5. A majority of the justices of the Court voted in favor of reconsidering the case en banc.

The en banc court consists of Chief Justice Adams and Justices Kelly, Goodman, Hightower, Countiss, Rivas-Molloy, Guerra, and Farris. Justice Landau, not participating.

Justice Farris, writing for the majority of the en banc court, joined by Chief Justice Adams and Justices Kelly, Hightower, Countiss, and Guerra.

Justice Rivas-Molloy, dissenting with separate opinion, joined by Justice Goodman.